Argued and submitted March 8, judgment modifying spousal support reversed; supplemental judgment granting wife attorney fees vacated; otherwise affirmed September 1, 2004

In the Matter of the Marriage of

Clarice M. DORNBUSCH,
*Respondent,*

*and*

Keith Paul DORNBUSCH,
*Appellant.*

00DM0126; A120221

96 P3d 877

Inge D. Wells argued the cause for appellant. With her on the brief was Wells & Wells.

Patrick Foley argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

In this domestic relations case, husband appeals the trial court's modification of wife's spousal support award, the trial court's award of attorney fees to wife, and the trial court's denial of husband's request for attorney fees regarding wife's contempt motion. We review the trial court's modification of spousal support *de novo*, ORS 19.415(3) (2001),[1] and reverse. We also vacate the award of attorney fees and costs to wife. We review the denial of husband's request for attorney fees for an abuse of discretion, ORS 107.445, and we affirm.

The parties were married for 33 years; their marriage was dissolved in February 2001. At the time of the dissolution, both parties were employed. Husband was an owner of a business called NuVenture that engaged in horizontal drilling for the installation of utilities. Husband's income was $3,200 per month at the time. Wife had a housecleaning business and worked 18 hours per week, making approximately $600 per month. She also received at the time approximately $550 per month in rental income. In the judgment of dissolution, wife was awarded the long half of the marital assets, including the marital home, which was subject to three mortgages. During the marriage, husband had obtained a second and third mortgage on the home in order to finance his business venture. The dissolution judgment required husband to pay the second and third mortgages, providing as follows in paragraph 5 of the judgment:

---

[1] The legislature amended ORS 19.415(3) in 2003. Or Laws 2003, ch 576, § 88 ("Upon an appeal from a [*decree*] **judgment** in a **case that constituted a** suit in equity **under common law**, the Court of Appeals shall try the cause anew upon the record." (Additions in boldface; deletions italicized in brackets.)). We need not decide whether the 2003 amendments to ORS 19.415(3) affect our standard of review because those amendments apply only to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a ("The amendments to ORS * * * 19.415 * * * by sections 85 to 89 of this 2003 Act apply only to the appeal of judgments entered on or after the effective date of this 2003 Act. Any appeal of a judgment entered before the effective date of this 2003 Act shall continue to be governed by the law in effect on the day immediately preceding the effective date of this 2003 Act."). Based on the plain meaning of the text of Oregon Laws 2003, chapter 576, section 90a, we apply the 2001 version of ORS 19.415(3) in this case. *But see Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (apparently citing the current version of ORS 19.415(3) in addressing a judgment that was entered before January 1, 2004).

"5. <u>Debts and Liabilities.</u> Each party shall pay and hold the other harmless from any debt or liability associated with any of the property they receive in this divorce except for the following:

"[Husband] shall pay and hold [wife] harmless from the second lien on the Brookings Home owing to the Bank of America in the current approximate amount of $48,876.26 ('Second Lien') and the third lien on the Brookings Home * * * in the current amount of $75,000 ('Third Lien'). [Husband] shall assume and pay or refinance as necessary these debts on or before closing of the sale of the Brookings Home. In the event [husband] does not refinance *or otherwise pay in full* the Second Lien and Third Lien on the Brookings Home at or before closing of its sale, [husband] shall pay to [wife], monthly payments on the balances of the Second Lien and Third Lien equal to the sums necessary to amortize both balances at 9% interest in five years from the date of the sale of the Brookings Home *until paid in full*."

(Underscoring in original; emphasis added.)

Additionally, the court directed husband to pay spousal support

"in the amount for $1,000 per month beginning on February 1, 2001[,] and continuing on the first day of each month thereafter for twelve months (a total of twelve payments) or until the family home and property * * * is sold whichever first occurs and continuing on the first day of the month thereafter in the amount of $500 per month on an indefinite basis for the support of [wife] as maintenance spousal support under ORS 107.105(1)(d)(D)."

After the date of the dissolution judgment, the marital home was sold. Husband was unable to refinance the second and third mortgages, and, under paragraph 5 of the judgment, husband was obligated to pay wife $2,586 per month until the obligations originally reflected by second and third mortgages were paid. In 2002, husband's business venture experienced financial difficulties and closed from March 2002 through April 2002.[2] He continued to make the payments

---

[2] NuVenture was restructured, and husband received an unsecured note for the money owing from the company.

under the judgment that had been designated as spousal support. However, he failed to make the monthly payments of $2,586 per month between March and July 2002. In June 2002, wife filed a motion seeking to hold husband in contempt for failing to make the payments required under paragraph 5 of the dissolution judgment from March 2002 through June 2002. Wife asked that the court impose a remedial sanction requiring husband to pay "$105,712.98 plus interest from February 15, 2002[,] to the date of payment, immediately from the 401(k) plan awarded to [husband]." Husband moved to dismiss the contempt proceeding on the ground that, "[a]s a matter of law, a contempt proceeding may not be used to enforce property division payments." In her response to husband's motion, wife contended that the money that husband was required to pay under paragraph 5 of the dissolution judgment was intended to provide support to wife for a period of five years. Wife also filed a motion to modify spousal support.[3] She asked the court to modify the monthly spousal support award from $500 "to $3,200 to prevent husband from extinguishing this *support payment* in a bankruptcy proceeding." (Emphasis added.)

At the hearing on the motions, wife testified that husband had threatened to file for bankruptcy, and she contended that the payments specified in paragraph 5 of the dissolution judgment were intended as spousal support and were at risk of being discharged by husband in a bankruptcy proceeding. The trial court declined to hold husband in contempt. However, in its letter opinion, it stated that, "[i]n this case, * * * the property settlement had monthly payments that were to replace spousal support" and that the equities in this case favored wife because husband had stopped making payments due to poor business decisions. The trial court then

---

[3] In response to husband's motion to dismiss the contempt proceeding, wife filed a reply and "request to modify spousal support" on August 20, 2002. In his reply, husband objected to wife's modification request as not complying with ORS 107.135 and UTCR 8.050. Wife filed a motion to modify spousal support on August 30, 2002. She filed a uniform support affidavit on September 3, 2002. She then filed a "Motion to Modify Spousal Support Order" along with an affidavit on October 29, 2002. The trial court apparently treated the latter as a motion and order to show cause. The hearing on the modification and the contempt motions ultimately was held on November 19, 2002.

issued a judgment modifying the spousal support award as follows:

"A.  The spousal support is increased to $3,086.00 per month for the next fifty (50) months.

"B.  Upon receipt of each monthly payment, [wife] shall file a *satisfaction of the $2,586.00 payment on the property distribution.*

"C.  At the end of the fifty (50) month period, after receipt of the fifty (50) payments set forth above, *the property distribution obligation shall be deemed satisfied* and the spousal support shall reduce to the sum of $500.00 per month."

(Emphasis added.)

On appeal, husband makes three assignments of error. First, he assigns as error the trial court's modification of the spousal support award, contending that the trial court improperly modified a property division award converting the property division award in the judgment into spousal support.[4] Second, husband contends that the trial court erred in awarding attorney fees and costs to wife. Third, he argues that the trial court erred in failing to award attorney fees and costs to him based on his successful defense of wife's contempt motion.

We turn to husband's first assignment of error, in which he contends that his obligations under paragraph 5 of the dissolution judgment were intended to constitute part of the property division award and therefore are not subject to post-judgment modification. He argues that, when it became apparent that contempt was not available to enforce his obligation under the judgment, wife attempted to "convert" the property division award in the judgment into spousal support so that it could be enforced as spousal support as opposed to a division of property. We understand wife's argument in response to be that husband's obligation under paragraph 5 was, in fact, originally intended as an award of spousal support and not a property division award. Therefore, what the

---

[4] We reject husband's alternative arguments in his first assignment of error without discussion.

court did, according to wife, was to modify what had originally been a combined spousal support award consisting of husband's payment of the mortgage obligations and the payment of support directly to wife. Wife relies on the trial court's letter opinion in the modification proceeding, which states:

> "Spousal support was at a higher amount until the residence was sold and then reduced based on [wife] getting the full equity with the second mortgages having been paid by [husband] or in the alternative, monthly payments for payoff of the seconds from the home sale, with the interest replacing the spousal support reduction and the principal being invested as a retirement. [Husband] received his retirement account free and clear with no [qualified domestic relations order]."

Wife concludes that, when husband stopped making the mortgage payments on the house, he effectively reduced her *income* by $2,586, causing a change in her economic circumstances that justifies an increase in the spousal support award.

ORS 107.135(1) establishes the provisions of a dissolution judgment that are subject to subsequent modification. ORS 107.135(1)(a) authorizes courts to modify spousal support awards based on a substantial change in circumstances occurring after the judgment. As to post-judgment modification of property awards, ORS 107.135(1)(e) limits the authority of the court to modify property awards to certain awards based on enhanced earning capacity.[5] Consequently, trial courts are without statutory authority to modify property divisions where the judgment does not purport to make a property division based on enhanced earning capacity. *See, e.g., Williams and Williams*, 134 Or App 8, 11, 894 P2d 523 (1995) (holding that, generally, a court cannot modify property division awards). Here, the trial court increased husband's spousal support obligation from $500 to $3,086 per month because of husband's failure to pay five installments owed under paragraph 5 of the dissolution judgment between

---

[5] ORS 107.135(1)(e) provides, in relevant part, that a court may, at any time after a judgment of dissolution of marriage, "[s]et aside, alter or modify any portion of the judgment that provides for a property award based on the enhanced earning capacity of a party that was awarded before October 23, 1999."

March and July 2002. The court also ordered that the payment of spousal support in those amounts would operate to satisfy husband's obligations under paragraph 5 of the dissolution judgment. The question before us is whether ORS 107.135 authorizes that kind of post-judgment change.

If the obligations under paragraph 5 of the dissolution judgment constituted a property division award by the trial court, then we agree with husband that the court lacked authority under ORS 107.135 to alter that allocation after judgment by changing the nature of the award from a part of the division of marital property to an award of additional spousal support. On the other hand, if, as wife argues, paragraph 5 originally was intended to award spousal support, then the court's order could be authorized by the statute. The distinction between support and property division depends on the underlying facts of each case. In this case, paragraph 5 must be characterized according to its essential nature, with the controlling issue being the nature and purpose of the award. *Schaffer v. Schaffer*, 57 Or App 43, 47, 643 P2d 1300 (1982). We observe before examining the facts of this case that, "[i]f the interest is a part of the marital estate at the time of the dissolution, its allocation to the parties is generally by its nature an award of property, not of support[,]" even if its allocation is to enable the parties to achieve financial self-sufficiency. *Horesky and Horesky*, 30 Or App 941, 944, 569 P2d 34, *rev den*, 281 Or 1 (1978).

In the dissolution proceeding, wife sought spousal support in the amount of $2,000 per month on an indefinite basis in addition to an equal division of property. Husband proposed that wife receive the family home and that she sell it and use the proceeds for investment. Husband agreed to assume responsibility for the second and third mortgages. He also proposed that the court award wife only transitional spousal support and that that award be in an amount less than $2,000 per month in light of the fact that she was earning at that time approximately $600 per month from her cleaning business and $550 per month in rental income. The trial court rejected both proposals in its ruling, deciding to give wife the long half of the marital property and spousal support. In its letter opinion in the dissolution proceeding,

the trial court explained the structure of the spousal support and property division as follows:

> "The house goes to [wife] at a value of $350,000. That is a realistic figure as to what it can be sold for even though it would be worth more if the real estate market were better in the Brookings area.

> "[Husband] is responsible for the second and third mortgages. If at the time the property is sold [husband] is unable to provide the cash to pay those off such that [wife] receives the sale price minus the first mortgage and costs of sale, then [husband] must begin monthly payments on the balance of the two loans on a five year amortization at 9% interest until he is able to pay off the balance. This assumes the loan balances are paid to the lien holders at the closing on the property from the sale proceeds. This will give [wife] the interest on those funds and the principal to invest if she wishes to do so.

> "Spousal support for maintenance is ordered of $1,000 per month for twelve months or until the home is sold if that occurs sooner than twelve months. Thereafter, the spousal support shall be $500 per month and permanent. [*Wife*] *does not need to pay an equalizing judgment and this arrangement gives her the long half of the property, funds she can invest and an income around $2,000 per month.*"[6]

(Emphasis added.)

In addition to the marital residence, wife was also awarded her Mainstay account valued at $18,323 and her Putnam stock account valued at $249. The parties were each awarded an equal share in a half-acre parcel of land, valued at $7,500 each. Husband was awarded his 401(k) account with a net value of $129,939 (subject to a loan of $11,619), an investment account valued at $16,719, and a timeshare valued at $2,000. Additionally, he received a fifth-wheel trailer worth $26,700 (subject to a $25,723 loan), a motorcycle worth $18,000, a flat-bed trailer worth $1,000, and a boat worth $600. Husband was also awarded an unsecured note for $112,000 owed by NuVenture. He was ordered, however, to

---

[6] In reaching its decision, the trial court considered wife's health condition. She had been diagnosed with osteoporosis, putting her at risk for future health problems that could affect her ability to work.

assume liability for the second and third mortgages under paragraph 5 of the judgment. According to the trial court, the net value of the assets received by husband was $158,440 and the net value of the assets received by wife was $222,561.

■ The trial court's letter opinion at the time of the dissolution judgment makes it clear that it contemplated that husband's payments on the second and third mortgages would put wife in a position where she could realize interest on the equity in the marital residence, equity that was awarded completely to her. While the trial court considered the parties' relative income and wife's ability to be self-sufficient in structuring the division of property, that consideration did not operate to change the nature of division of the marital assets between the parties into a support award. Rather, the dissolution judgment made discrete awards for spousal support and for the division of marital property. It appears from the record that the trial court contemplated that interest that could be earned from wife's share of the marital estate, together with earnings from her employment, would provide for her post-judgment support. Moreover, unlike the spousal support award in the judgment of dissolution, husband's obligation under paragraph 5 was not indefinite. He was required to *pay in full* the amounts owing on the second and third mortgages. Under those circumstances, we conclude that the requirement that husband pay the second and third mortgages was part of the trial court's property division award and was not part of its spousal support award. It follows that the trial court could not modify that part of its property division award under ORS 107.135 after the judgment.

■ Wife has not alleged any additional change of circumstances in support of her motion to modify the spousal support award aside from husband's failure to make the required payments under paragraph 5 of the dissolution judgment. Therefore, we reverse the trial court's judgment modifying the amount of spousal support that husband is obligated to pay. Of course, husband's obligations under paragraph 5 remain intact. Because we understand the trial court's judgment for attorney fees and costs to have been predicated upon wife prevailing on the merits under ORS

107.135, the attorney fee and costs award to wife must also be vacated. ORS 20.220(3).

■ Finally, husband assigns as error the trial court's denial of his request for attorney fees in the contempt matter. Husband asked the trial court to award him attorney fees and costs pursuant to ORS 107.445.[7] He contends that, because there was no statutory basis for holding him in contempt and because he was the "prevailing party" in the contempt matter, the trial court erred in not granting his request for attorney fees. An award of attorney fees under ORS 107.445 is discretionary on the part of the trial court. The trial court exercised its discretion; it found that husband "willfully fail[ed] to make payments for several months," noting that husband had sufficient funds accessible to him in March through July 2002 in his 401(k) account to pay his obligations. We conclude that, in light of all of the circumstances, the trial court did not abuse its discretion in denying husband's request for an award of attorney fees.

Judgment modifying spousal support reversed; supplemental judgment granting wife attorney fees vacated; otherwise affirmed.

---

[7] ORS 107.445 provides, in pertinent part:

"In any proceeding brought under ORS 107.095, 108.110 and 108.120, and in any contempt proceeding in any suit for marital annulment, dissolution or separation, the court may render a judgment awarding to a party, or directly to the party's attorney, a sum of money determined to be reasonable as an attorney fee at trial and on appeal therein."