Argued and submitted August 28, 2007, judgment reversed as to award of spousal support and modified as to the property division to award wife one-half of husband's interest in the trusts; otherwise affirmed April 23, 2008

In the Matter of the Marriage of

Robert Warren BROWN,
*Petitioner-Appellant,*

*and*

Carolyn Marie ALBIN,
aka Carolyn Marie Brown,
*Respondent-Respondent.*

Curry County Circuit Court
04DM0201; A129850

183 P3d 207

Clayton C. Patrick argued the cause and filed the briefs for appellant.

Marc D. Perrin argued the cause for respondent. With him on the brief was Marc D. Perrin, P.C.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Husband appeals from a dissolution judgment awarding wife spousal support from husband's interests in two family trusts created by husband's father and grandmother. On *de novo* review, ORS 19.415(3), we reverse the award of spousal support, modify the property division by awarding wife, as part of the parties' property division, one-half of husband's interest in both trusts, and otherwise affirm.

Husband and wife were married for 24 years. They lived the majority of their married life in Montana, where they raised one daughter and where both practiced law: wife at Montana's water court, and husband in private practice, and in a county prosecutor's office. In this appeal, the dispute concerns the disposition of two family trusts of which husband is a beneficiary. Both trusts were created before husband's marriage, but husband received nothing from either trust until 1997.

The first trust, the Brown-Moore Trust, was created by husband's grandmother and grants to husband and his two sisters a monthly mandatory distribution of the trust's income. Husband's and his sisters' interests in the Brown-Moore Trust are for life only. Upon each sibling's death, that sibling's then-living children receive the deceased sibling's share of the trust. In husband's case, his daughter would be entitled to one-third of the trust upon his death.

The second trust, the Brown Trust, was created by husband's father and grants to husband and his two sisters a monthly mandatory distribution of the trust's income, until the youngest sibling turns 55, at which time each of the three siblings receives one-third of the trust corpus. At the time of the dissolution trial, which was just a year and a half before his youngest sibling's 55th birthday, the value of husband's interest in the Brown Trust corpus was $250,000.

Although husband argues that wife understood that he and wife would not depend on the trusts for their income, it is clear from the evidence that, not long after husband began receiving income from the trusts, the trusts became a

significant financial asset for husband and wife. Less than a year after he began receiving income from the trusts, husband, concerned about his physical health after being diagnosed with type 2 diabetes, quit his full-time work at the prosecutor's office and began working on a part-time basis in various positions, including legal consulting, teaching at a university, and sitting in for judges at the city court. His earnings from those jobs totaled about half the earnings that he had received while at the prosecutor's office. Despite that, husband and wife decided to build a new home, which wife described as her "dream home," in Bozeman, Montana. Husband's sister, the trustee of both trusts, agreed to mortgage an asset of the Brown Trust corpus, a condominium in California, in order to provide husband and wife with sufficient funds to finance the construction of their new home. Husband and wife took the biggest portion of the mortgage proceeds, but husband's sisters also received some proceeds as well.

Even before the parties had built their new home, husband talked about leaving Montana and both husband and wife "retiring." After their daughter graduated from high school in 2000, husband's conversations with wife about retiring became more serious. Husband and wife, at this time, were in their mid-fifties, and wife did not want to leave her job, where she had achieved "quite a bit of success," nor did she wish to leave her home. Wife also expressed concern about whether they really had the income to retire. In particular, she was concerned about paying for their daughter's college education and still having sufficient funds to retire. Husband approached his sister about invading his portion of the Brown Trust in order for husband and wife to have more funds, but husband's sister refused. Eventually, husband's sister used part of the Brown-Moore Trust to pay some of their daughter's college expenses.

Husband continued to assure wife that they would have sufficient funds for them both to quit their employment in Bozeman. He testified that they discussed that, upon retiring, their monthly income would consist of an annuity from wife's stepfather, some monthly disbursements from deferred compensation plans, payments from wife's state retirement account, and his dispersals from the trusts, and that "if we were running low on cash, [we could get] part-time jobs or

full-time jobs for awhile." Wife testified that husband was consistent in his statements to her that the trust income and the trust corpus "would be available to fund this retirement." By the time that wife agreed with husband to retire, husband was receiving $1,000 per month from the Brown Trust and $430 per month from the Brown-Moore Trust, all of which was deposited each month in the parties' joint checking account. Their other monthly income totaled $1,400 per month.

In 2002, husband and wife sold their home. According-ing to husband, the parties then had approximately $120,000 in assets. They financed the purchase of a fifth-wheel trailer, traveled for a few months, and eventually settled in Gold Beach, Oregon, where they financed the purchase of a second recreational vehicle (RV). They maintained the RV as a sta-tionary "home base" in an RV park, even constructing an addition to the RV and building decks around it. Sometime thereafter, it became clear that they did not have enough income to pay their monthly bills. Their $120,000 in assets had been spent, and their monthly fixed expenses by then included $670 per month for the fifth wheel, $690 per month for the mortgage on the RV, and $425 per month for the trailer park space rent. Husband began working as a private investigator, and wife worked in the trailer park office.

In 2004, wife and husband separated, and wife even-tually moved back to Montana. At the time of trial, husband was still working part-time as a private investigator, and wife was working part-time in private legal practice, but they generated only modest incomes from their respective jobs. Moreover, their debt had grown, with wife, at the time of trial, having credit card and furniture store debt totaling $11,000, and husband having credit card debt totaling $25,500. Their fifth wheel was valued at $13,000 less than they owed on it, and the parties were having difficulty selling their RV, because although the RV, in its stationary setting and with the improvements husband and wife had made to it, was worth $130,000, no financial institution would finance its purchase.

The trial court concluded that husband's trust inter-ests had been "completely integrated into the financial plan-ning of the parties." The trial court, therefore, granted wife a

judgment of $400 per month from husband's future trust income distributions until the RV was sold and, thereafter, a judgment of one-half of both trusts' monthly income distributions and one-half of any distribution of the Brown Trust corpus. The trial court furthermore ordered that these monies be treated as spousal support. The trial court awarded husband the fifth wheel and ordered the RV to be sold and the proceeds from that sale to be divided equally between husband and wife.

Husband appeals that portion of the judgment that awards wife monies from his trusts. He argues that he rebutted the presumption of equal contribution in acquiring his interests in the trusts, and that the trust interests should not have been included in the trial court's division of property. He further argues that the trial court erred in awarding spousal support, because the evidence does not support such an award. Husband also appeals the award of attorney fees to wife.

We start first with husband's second assignment of error, that the trial court erred in awarding spousal support. We conclude that the trial court did err in awarding spousal support, but on different grounds from those argued by husband. ORS 107.105(1) allows a trial court to include in a judgment of dissolution an award of spousal support and a division of real and personal property. It does not, however, authorize the court to award property as spousal support.[1] A trust interest is a property interest and is therefore to be treated as a divisible asset in a dissolution proceeding. *Jones and Jones*, 158 Or App 41, 49, 973 P2d 361, *rev den*, 328 Or 666 (1999); *Wilson and Wilson*, 155 Or App 512, 516-17, 964 P2d 1052 (1998); *Becker and Becker*, 122 Or App 567, 571, 858 P2d 480, *rev den*, 318 Or 60 (1993). The fact that the court awarded wife an interest that came in the form of monthly payments could not change the nature of the interest being divided. *Horesky and Horesky*, 30 Or App 941, 944,

---

[1] ORS 107.105(1)(g) does allow the court to create a trust from the parties' property in order to allocate support to one or both of the parties. The trial court, in this case, did not establish a trust for that purpose. It simply ordered that husband's trust interests be treated as spousal support. Nothing in the statute allows the court to do that.

569 P2d 34 (1977), *rev den*, 281 Or 1 (1978). Because husband's interests in the trusts are property interests, the court had no authority under ORS 107.105 to treat them as spousal support, and the trial court erred in doing so.

■       Husband's main contention, though, is that the trial court erred in awarding wife anything from his interests in the trusts. He argues that the trusts were his separate property, that wife was never an intended beneficiary of the trusts, and that wife made no contribution to the acquisition of his interests in those trusts. Consequently, husband argues, wife is not entitled to any portion of his interests in the trusts.

■       ORS 107.105(1)(f) guides the court's division of property in a dissolution proceeding. The overarching consideration is that the division be "just and proper in all the circumstances." *Id.*; *see also Kunze and Kunze*, 337 Or 122, 132, 92 P3d 100 (2004). In *Kunze*, the court explained that before the "just and proper" language is considered, the statute requires a court to "impose[ ] further considerations" when the property is a "marital asset"—that is, property acquired during the marriage. *Kunze*, 337 Or at 133-34. Where the property is a marital asset, it is subject to a "rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage[.]" ORS 107.105(1)(f). In other words, where the presumption applies, it is presumed to be "just and proper" to divide the property equally between the parties. *Kunze*, 337 Or at 134.

■       Husband argues that, as to his interests in the trusts, he rebutted the presumption of equal contribution. We agree. The trusts were created by husband's father and grandmother, wife was not an intended beneficiary of either trust, and wife did nothing to contribute to husband's interests in the trusts. *Tsukamaki and Tsukamaki*, 199 Or App 577, 583, 112 P3d 416 (2005) ("If one spouse can establish that the marital asset was acquired by gift and that the other spouse neither contributed to its acquisition nor was the object of the donative intent, then the statutory presumption is rebutted."). Were there no other considerations in this case, husband would be entitled to keep all of his interests in the trust. *Kunze*, 337 Or at 135. We conclude, however, that it

is "just and proper" to divide the interests in both trusts between husband and wife.

In *Kunze*, the court explained:

"Although the inquiry into the 'just and proper' division necessarily includes consideration of the statutory factors, including the court's determination under the presumption of equal contribution, that inquiry also takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable. Although they will vary according to the individual circumstances of the parties, this court has identified some of the equitable considerations under ORS 107.105(1)(f) to include the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and, * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling."

*Id*. at 135-36 (citations omitted). The court further stated:

"The trial court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion. This court will not disturb that discretionary determination unless it concludes that the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires."

*Id*. at 136.

The trial court ordered the trust interests to be included in the property division because it concluded that husband's interests in the trusts had been "completely integrated into the financial planning of the parties." We agree with that determination. Husband used his interest in the Brown Trust corpus in order to finance the construction of their home. He convinced wife that they could retire based on income that included his interests in the trusts. In fact, the trust income made up half of the income that husband said the parties would rely on when they left their jobs and moved from Montana. The parties spent all of their assets within a short time of moving to Gold Beach, so that the only asset of significant value left was husband's interest in the Brown

Trust corpus, valued at $250,000. Although it is true that the money from the trusts was not a consideration for a good portion of their marriage, it became key to the decisions that the couple made for their early retirement. At that point, husband's financial decisions and his assurances to wife all indicated his intention to integrate his trust interests into "the common financial affairs of the marital partnership." *Id.* at 136.

Husband's assurances and his financial planning with regard to the trusts caused wife to change her circumstances dramatically, leaving a new home and a satisfying, stable job to begin a retirement that was more husband's desire than hers. *See Becker*, 122 Or App at 571 (granting the husband a greater equalizing judgment against the wife, where the parties had not saved for retirement, "in anticipation that [the] wife's trust receipts * * * would keep them financially secure during retirement"). That change of position, in reliance on husband's actions, cannot be ignored in making an equitable division of the property.

Moreover, this marriage was of long duration, and in such cases, "we are less concerned with identifying the relative contributions of the parties than we are with ensuring that the parties separate on as equal a basis as possible under the circumstances." *Bentson and Bentson*, 61 Or App 282, 285, 656 P2d 395, *rev den*, 294 Or 613 (1983). In this case, the most valuable asset the parties have is husband's interest in the Brown Trust corpus, valued at $250,000. There is no other asset of the parties that is comparable. Were we to ignore that asset in dividing the marital property, we would not leave the parties "on as equal a basis as possible." *Id.* It is therefore just and proper to give wife a portion of husband's interests in the trusts.

■ Husband argues that the trust income is too speculative for the court to award any monies from it. While it is true that the exact amount of monthly trust income is unknown, husband's right to a mandatory monthly distribution and his right to one-third of the Brown Trust corpus *are* known, and the court may, therefore, "order the division or distribution of [the] party's trust benefits effective as of the time they are received or are reachable by the party." *Jones*,

158 Or App at 49. Moreover, there is no evidence in the record to suggest that the value of husband's interest in the Brown Trust corpus, worth $250,000, would change dramatically before the time at which husband became entitled to his share of the corpus.

We therefore agree with the trial court's division of the property, including its division of the trust interests. The trial court's only error was in designating the division of the trust interests as spousal support. In light of our holding on the division of property, we need not address husband's third assignment of error relating to wife's award of attorney fees.

Judgment reversed as to award of spousal support and modified as to the property division to award wife one-half of husband's interest in the trusts; otherwise affirmed.