Argued and submitted December 4, 2014, spousal support award reversed, property division vacated and remanded, otherwise affirmed August 3, 2016

In the Matter of the Marriage of

Barbara JOHNSON,
Guardian *ad litem* and Conservator for
Joanne M. Price,
*Petitioner-Respondent,*
*and*

Gari W. PRICE,
*Respondent-Appellant,*
*and*

PRICE FAMILY TRUST
and Peter A. Price,
Successor Trustee of Price Family Trust,
*Respondents below.*

Union County Circuit Court
110747171; A154023

380 P3d 983

Russell B. West, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Michele Grable argued the cause for respondent. With her on the brief were Evan D. Hansen and Grable, Hantke & Hansen, LLC.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Husband appeals a general judgment of dissolution, challenging the spousal support award and property division by means of four assignments of error. In the first assignment, husband contends that the trial court erred by awarding wife spousal support and continuing that support until wife sells part of the real property awarded to her. In his remaining assignments of error, husband challenges the property division and contends that the court erred by (1) revoking the parties' trust, (2) miscalculating and misapplying tax considerations, and (3) crediting husband with $18,200 worth of equipment sales while failing to credit wife with the sale of a $22,000 piano. For the reasons explained below, we reverse the spousal support award, vacate and remand the property division, and otherwise affirm the dissolution judgment.

Neither party requests *de novo* review, and we discern no reason to conduct such review. *See* ORS 19.415(3)(b) (we have discretion to apply *de novo* review in equitable actions); ORAP 5.40(8)(c) (we will exercise our discretion to apply *de novo* review only in exceptional cases). Accordingly, we state the facts "as the trial court found them and as supplemented by our review of the record." *Bailey and Bailey*, 248 Or App 271, 273, 273 P3d 263 (2012).

Husband and wife were married in 1952 and separated in 2010 when both were 84 years old. Their five children were adults by that time. Throughout their marriage, husband worked as a log truck driver and, later, as an operator for his excavating company. Wife was a homemaker and the primary caretaker of their five children. At times, wife also gave piano lessons in their home and assisted husband with bookkeeping relating to his excavating business. The parties enjoyed a comfortable middle-class lifestyle, and they owned and lived on a 137-acre ranch.[1] The ranch consisted of pasture and hay meadows and contained a large house where the parties lived, as well as a mobile home that produced $750 a month in rental income. Husband also raised a herd of bison and produced hay on the ranch for profit.

---

[1] The ranch consisted of tax lots 300, 400, 3300, 3400, 3500, and 3601, most of which were held in the Price Family Trust.

By the time of trial, however, the parties' circumstances had changed. Wife suffered from dementia, vertigo, and stress-related anxiety. She was unable to care for herself independently and lived in an adult foster home in La Grande.[2] Husband was generally in good health, but there was evidence that he had difficulty caring for himself, and he displayed some problems with his cognitive functioning. Husband also had difficulty carrying out the bison and hay operations on their ranch, which, by that point, were operating at a loss. The ranch was the parties' major asset and, aside from the bison, they had no liquid assets. Both parties received Social Security; husband received $1,244 per month, and wife received $587 per month. Before trial, the parties sold some of their personal property to obtain additional funds. Wife sold her grand piano for $22,000, which she used to pay her divorce attorney. Husband, in turn, sold several pieces of farm equipment totaling $18,200.

At trial, wife asked the court to award her the long half of the property instead of awarding her spousal support. She also requested that the Price Family Trust, where most of their property was held, be revoked. Husband, in contrast, asked that the court order the sale of the ranch as a whole, undivided parcel, rather than as individual lots. Husband also requested that the court order the sale of a conservation easement on the property. His reasoning was that the sale of the easement would yield enough money to pay for wife's foster care while still ensuring the preservation of the ranch even after its sale. Wife strongly opposed selling a conservation easement, in part, because its requirement that the property be sold as a whole would make the ranch more difficult to market and sell.

The trial court heard testimony from various witnesses and made extensive findings of fact about the parties' property. In the end, it ordered husband to pay wife maintenance spousal support in the amount of $2,600 per month initially, to be increased to $3,000 at the start of the following year. The support amount was intended to cover wife's foster care expenses, which were expected to go up in price.

---

[2] The parties' daughter, Barbara Johnson, was appointed as wife's conservator and guardian *ad litem* for the divorce proceedings.

The court directed husband to "fund the support [award] from the sale of as many bison as necessary each month." The court ordered that the spousal support continue "until the first day of the first month following the first sale of one of the real properties awarded to [wife]." That is, the court wanted wife to receive spousal support during the period of time that it took to sell at least one of the tax lots awarded to her, which the court expected she would have to do in order to cover the costs of her care. The court "anticipated that some of wife's land [would] sell within six months," and it ordered that she "make a good faith effort to sell at least one of her tax lots within the next six months or as soon as possible thereafter." The court retained jurisdiction to oversee that provision in the judgment.

As to the property division, the court awarded wife tax lots 300, 400, and 3300 for a total value of $618,900,[3] and $2,685 worth of personal property. Husband's share included tax lots 3400, 3500, and 3601 (worth $675,000), the bison (worth $43,738), personal property (worth $46,765), and an additional $18,200 worth of personal property that, according to the trial court, husband had impermissibly sold during the pendency of the case.[4] To equalize the property division, the court awarded wife an additional $83,777, stating:

> "All of the equalizing judgment is attributable to my crediting wife with $119,000 in tax consequences based on the anticipated immediate sale of tax lots 3300, 300 and 400. Wife may end up not selling all of her real property immediately. She may decide to only sell half of tax lot 3300 and hence not incur all of the income tax consequences projected by [her tax expert]. Another scenario is that wife

---

[3] The court arrived at this figure after subtracting $47,100 to reflect the assumed six percent realtor fee related to the sale of the parcels and $119,000 to reflect the minimum tax liability that wife would incur from the sale. As to the tax liability figure, the court acknowledged as follows:

"Although [wife's tax expert] opined that the income tax liability would be $119,000 for the sale of parcels 3300, 3500 and 3601 rather than for 3300, 300 and 400, I was unable to discern the methodology he used to arrive at a basis for each property. Therefore, I am unable to perform the computations to recompute the capital gains on these three parcels. I find that $119,000 is an adequate adjustment for tax liability as it is unlikely that wife will sell all three tax lots immediately."

[4] The court did not subtract any sale fees or tax liability figures from the value of the property awarded to husband.

may choose to sell only tax lot 3300 and devise tax lots 300 and 400 to all or some of her children. By doing so, her children would benefit from the step up in tax basis and thus avoid the large capital gains tax that [her tax expert] predicted. On the other hand, husband will likely need to sell some of the land that has been awarded to him to fund his long term care in spite of the fact he now denies any problems caring for himself. Because husband did not ask for consideration of income tax consequences based on anticipated real estate sales and did not present any evidence on that issue, I did not take that factor into account. In reality, it likely will be a factor and could significantly penalize husband if he sells tax lots 3500 and 3601. In view of the forgoing, depending on the decisions wife makes, wife could end up with the long half of the marital estate."

We consider husband's assignments of error in turn, beginning with husband's first assignment in which he challenges the spousal support award. In doing so, "[w]e review the trial court's legal conclusions for errors of law. Furthermore, the court's determination regarding 'what amount and duration of support is just and equitable is discretionary' and we, accordingly, review for abuse of discretion." *Stuart and Ely*, 259 Or App 175, 180, 313 P3d 317 (2013) (internal citations omitted) (quoting *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012)).

Husband contends that the spousal support award in this case is inequitable because he would have to sell the bison that were awarded to him in the property division in order to make his payments. According to husband, "because [he] will have to pay support by selling a part of his share of the marital estate, his share will dwindle, and the 50/50 distribution that the court intended will cease to exist." We understand the gist of husband's argument to be that the court erred in awarding spousal support where there was no evidence to support a finding that he had the ability to pay that award. Additionally, husband challenges the duration of the award, arguing that, because the court ordered spousal support to continue until wife sells some of the property awarded to her, wife has an incentive to delay the sale of her property for as long as possible. Husband posits that a better approach would be to order him to pay spousal support but to credit those payments towards the equalizing judgment

that he was ordered to pay. Alternatively, husband argues that we should impose a six-month time limit on the spousal support payments, which is how long the court anticipated that it would take wife to sell at least one of her parcels.

Wife, in turn, argues that the court did not err in awarding spousal support for the period of time that it takes for her to sell a part of the property awarded to her. Wife begins by noting that husband essentially challenges the spousal support award only on the grounds that (1) the source of the payments was expected to be assets (the bison) awarded to him in the property division and (2) the duration was not appropriate given the parties' circumstances. According to wife, we have previously rejected husband's first argument "that a property division should exclude the value of property that may become a source for spousal support." Wife argues that, although she was awarded property that she could then liquidate and use to support herself, it was just and proper for the court to conclude that wife needed spousal support to cover her immediate need for full-time care. As to husband's second argument, wife argues that the duration of the spousal support award was correct because it was tailored to the parties' circumstances. Wife claims that, contrary to husband's assertions, she was not allowed the freedom to procrastinate on the sale of her property because the court retained jurisdiction to ensure that wife was making a good faith effort to sell at least one of her tax lots within six months. Ultimately, wife contends that the trial court properly exercised its discretion to guarantee that wife could take care of herself until she was able to sell her property.

On review, we conclude that the trial court erred in awarding wife spousal support in the manner that it did. At the outset, we note that, under ORS 107.105(1), a trial court in a dissolution proceeding has the authority to provide for an award of spousal support, as well as the division of the parties' real and personal property. *Brown and Albin*, 219 Or App 475, 480, 183 P3d 207 (2008).[5] In a long-term marriage, a dissolution judgment will often provide for both in

---

[5] A court may order "[s]pousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period." ORS 107.105(1)(d)(C).

order to achieve "certain social as well as financial objectives which may be unique to the parties." *See Haguewood and Haguewood,* 292 Or 197, 206, 638 P2d 1135 (1981). In such cases, the goal is to provide the parties with "the resources for self-sufficient, post-dissolution life apart insofar as possible within the limitations of the capabilities and property of the parties." *Id.* at 207.

Thus, on appellate review, the issue of spousal support "cannot adequately be considered except in light of the provisions in the dissolution decree for division of property." *Grove and Grove,* 280 Or 341, 344, 571 P2d 477, *reh'g den,* 280 Or 769, 572 P2d 1320 (1977); *see also Gillis and Gillis,* 234 Or App 50, 58, 227 P3d 809 (2010) ("[I]n assessing the need for spousal support, all the financial provisions of the judgment must be considered."). That is especially true where, as here, the spousal support award bears a direct connection to property awarded as part of the dissolution judgment (*i.e.,* the bison in this case). In such cases, it may be difficult to determine whether an award constitutes spousal support or is instead a part of the property division. Where an award consists of periodic payments, the "label given to payments *** is not conclusive of their character." *Esler and Esler,* 66 Or App 452, 454, 673 P2d 1386 (1984); *see also Brown,* 219 Or App at 480-81 (noting that the "fact that the court awarded wife an interest that came in the form of monthly payments could not change the nature of the interest being divided,"—that is, a share in husband's distributions from a trust, a property interest).

In analyzing the spousal support award in this case, we observe that the court specifically directed husband to "fund" the spousal support award using the bison that it awarded to him as part of his share of the property division. That was impermissible. We have previously held that, "in order for the court to make an award of support, there must be evidence of the obligor spouse's future earning potential and ability to pay." *Hendgen and Hendgen,* 242 Or App 242, 250, 255 P3d 551 (2011). In this case, the court acknowledged, as wife had conceded, that husband's monthly income was not enough to cover even his own monthly expenses, yet it still awarded spousal support. The court's reasoning for awarding such support was that husband could generate the

necessary funds by selling the bison awarded to him in the property division.

However, we have previously held that ORS 107.105(1) does not "authorize [a] court to award property as spousal support." *Brown*, 219 Or App at 480. Here, the court effectively did that by relying on the sale of the bison to support its spousal support award. The bison were a property interest at the time of the dissolution (worth $43,738) and should have been "treated as a divisible asset in [the] dissolution proceeding," not as an indefinite source of income. *See id.* As we have previously observed, if a property interest "is a part of the marital estate at the time of the dissolution, its allocation to the parties is generally by its nature an award of *property*, not of support[,] even if its allocation is to enable the parties to achieve financial self-sufficiency." *Dornbusch and Dornbusch*, 195 Or App 61, 68, 96 P3d 877 (2004) (internal quotation marks omitted; emphasis added).

Contrary to wife's assertion on appeal, this is not a case where the bison could serve as both a marital asset and as a source of income for spousal support. The cases on which wife relies all involved either real property or professional corporations—in other words, types of property that could be awarded as assets in the property division and also generate *new* income to sustain future spousal support payments. *See Baumgartner and Baumgartner*, 95 Or App 723, 770 P2d 965, *rev den*, 308 Or 382 (1989) (involving a dental practice awarded to husband); *Stewart and Stewart*, 59 Or App 713, 651 P2d 1379 (1982) (involving a veterinary practice awarded to husband); *Goebel and Goebel*, 56 Or App 52, 641 P2d 59 (1982) (involving a professional corporation awarded to husband). The bison in this case had a fixed value and were not expected to generate new income. Although wife asserts that husband was not "required by the judgment to liquidate assets awarded to him in order to pay spousal support," that is precisely what the spousal support award required husband to do. Thus, under the circumstances of this case, it was legal error for the court to provide for spousal support in the manner that it did.[6]

---

[6] Given our disposition, we need not address husband's arguments concerning the amount and duration of the spousal support award.

We next turn to husband's second, third, and fourth assignments of error, in which he challenges the property division. When rendering a judgment of dissolution, the court has the authority to provide for "the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper." ORS 107.105(1)(f). The ultimate determination of what is "just and proper" is a matter of discretion, and "that discretionary determination should not be disturbed unless the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Fine and Fine*, 272 Or App 307, 317, 355 P3d 198 (2015) (internal quotation marks omitted). To the extent that the court relied on legal conclusions to reach its discretionary determination, we review those conclusions for legal error. *See Herald and Steadman*, 355 Or 104, 107, 322 P3d 546 (2014), *cert den*, ___ US ___, 135 S Ct 944, 190 L Ed 828 (2015). Furthermore, we review the trial court's findings of fact for any evidence in the record. *Berg*, 250 Or App at 2.

Preliminarily, we begin by addressing husband's fourth assignment of error in which he contends that the court erred by revoking the parties' trust. In doing so, we recount additional procedural facts.

In 1991, husband and wife transferred tax lots 400, 3300, 3400, and 3500 by bargain and sale deed to the Price Family Trust. The tax lots were the only property held in the trust, which comprised over 95 percent of the marital estate. Husband and wife were the only trustees up until the first day of trial, at which point husband resigned and appointed the parties' eldest son, Peter Price, as cotrustee with wife. The court believed that husband took such action either because he was no longer capable of managing the trust assets or because he was attempting to place the trust assets out of the court's reach.[7] In a letter opinion, the court found that, regardless of husband's intent, the court had authority to revoke the trust, which would cause the trust assets to "devolve into [the parties'] joint ownership

---

[7] The Price Family Trust and Peter Price were not initially joined as necessary parties to the dissolution proceeding; they were joined after the court issued its letter opinion but before it issued the general judgment of dissolution.

for distribution by the court." In the general judgment of dissolution, having then joined the trust and Peter Price as necessary parties, the court ordered the trust's revocation.

On appeal, husband argues that the court erred in revoking the trust. In particular, husband claims that the court erred by ruling that husband and wife were the only beneficiaries of the trust and by either misinterpreting or disregarding the trust provisions concerning revocation. Husband asks that we modify the property division award in accordance with what the trust provisions allow or that we remand the case to the trial court for modification. Husband further requests that we allow the parties to continue to explore the possibility of a conservation easement (which was opposed by wife).

Wife, in turn, argues that the court did not err in revoking the trust because that decision was within the court's equitable powers. Wife first claims that, although there were other beneficiaries to the trust, husband and wife were not precluded from revoking the trust because the trust was revocable by its very nature. Second, wife contends that the court had the authority to direct the parties to dissolve the trust because all of the trust assets were reachable by the parties, as cosettlors and cotrustees, at any time. Wife argues that, by revoking the trust, the court ultimately was able to disentangle the parties to the greatest extent possible.

We conclude that the court's exercise of authority over the *trust assets* was legally permissible. Given the relief that husband now seeks—that we reconsider the option of a conservation easement or limit the court's authority to dispose of the trust assets—we understand husband's challenge to be, in essence, a challenge to the court's authority to divide the marital assets held in trust. To that end, husband's position regarding the trust's revocation does not yield the result he seeks. Because this was a dissolution proceeding and husband and wife were the trust's only beneficiaries,[8] the court had the authority to "exercise direct

---

[8] For the purposes of ORS 107.105(1)(f), the parties' children held mere expectancies, because the trust could be revoked by husband or wife "at any time and for any reason." *See Githens and Githens*, 227 Or App 73, 81, 84, 204 P3d 835,

authority over the disposition of trust assets." *Jones and Jones*, 158 Or App 41, 49, 973 P2d 361, *adh'd to on recons*, 159 Or App 377, 981 P2d 338, *rev den*, 328 Or 666 (1999); *see also Killam and Killam*, 251 Or 59, 444 P2d 479 (1968) (trial court order directing the partition and the sale of trust property was permissible when it was held in trust solely for the benefit of husband and wife). As we have previously explained:

> "[T]he court may order the division or distribution of a party's trust benefits effective as of the time they are received or *are reachable by the party*. It is also within the court's authority to direct the division of nontrust property or to enter equalizing money judgments that are based in whole or in part on the value of trust assets or interests that cannot be (or are not ordered to be) reached directly."

*Jones*, 158 Or App at 49-50 (emphasis added). Thus, because the nature of the revocable trust allowed husband and wife to reach those assets at the time of the dissolution, it was within the court's authority to direct the division of the trust assets as necessary to the dissolution proceedings. *See Johnson v. Commercial Bank*, 284 Or 675, 680-82, 588 P2d 1096 (1978) (a settlor who retains the right to revoke a trust "will be treated as the owner with respect to creditors"); *see also Jones*, 158 Or App at 49 (a court can divide trust assets effective as of the time the party can reach the assets).

Having established that it was proper for the court to dispose of the trust's marital assets, we now consider whether the court abused its discretion in distributing the parties' assets in the manner in which it did. In doing so, we consider husband's second and third assignments of error. As noted, we review the trial court's findings of fact for any evidence and its conclusions of law for legal error.

Husband's second assignment of error challenges the court's consideration of wife's tax liability and sales costs in its property division. To be clear, husband does not challenge the court's general authority to consider those costs

---

*rev den*, 347 Or 42 (2009). To the extent that the parties' children held a beneficial interest, they did so "subject to the possibility that it may disappear at any time and for any reason." *Id.* at 83. As such, the court was not required to consider the children's interests in its division of the trust assets.

as to wife's property award.[9] Rather, husband argues that the court erred by miscalculating the taxes wife would incur from the sale of her parcels and by subtracting the taxes and real estate commissions from wife's property award while failing to do the same for husband. He contends that the court did not have sufficient evidence by which to base its tax calculations for wife's share, given that wife's expert witness calculated her tax consequences based on *all* of her income, rather than just the sale of her property. He also notes that the expert's calculations assumed that the court would award wife tax lots 3300, 3500, and 3601, even though the court ultimately awarded tax lots 300, 400, and 3300. He claims that the difference in the value and basis between those lots could be significant. Husband further argues that the court should have considered the tax consequences related to husband's property award, given that it concluded that husband would likely have to sell his property as well. He claims that his failure to present evidence with regard to his tax liability is indistinguishable from wife's failure to present pertinent tax liability information. Husband requests that we vacate the equalizing judgment, given that the trial court ordered that judgment to cover the tax liability credit awarded to wife.

Wife, in turn, claims that the trial court properly credited her with the anticipated costs and taxes of the sale of her property, properly declined to credit husband with anticipated costs and taxes on the sale of his property, and properly awarded her an equalizing judgment to cover her expected tax liabilities. She argues that the court had sufficient evidence by which to reasonably assess her tax liability and sales costs. Wife claims that husband did not challenge the evidence presented by wife's tax expert at trial, including the consideration of wife's Social Security income in the expert's calculations, nor did he present his own expert to challenge the expert's methodology. She contends that the amount of tax liability need not be determined with complete certainty, so long as there is a reasonable and supportable basis to assess the probable liability to a party. Wife

---

[9] Husband's position on appeal is that a court must consider tax consequences pursuant to ORS 107.105(1)(f)(G).

claims that, in this case, the tax liability incorporated into the trial court's calculations is probably less than what wife will ultimately pay in taxes, given that the expert's calculations were conservative and the land awarded to wife was worth more than the land the expert had anticipated would be awarded to wife. As to husband's challenge to the trial court's failure to similarly credit him with the tax liability and sales costs, wife contends that, in order for the court to have applied such credit, husband had the burden of presenting evidence of what those taxes and costs would be and establishing that he indeed contemplated selling his property. Wife contends that husband did not meet that burden and, as such, we should not vacate the equalizing judgment.

On review, we address husband's assignment of error only as to the tax liability.[10] We have previously explained that,

> "[i]n dividing marital property, the court may consider the tax consequences that the division may have on the parties. However, if the court is to make adjustments in a property division based on tax consequences, *the court must be presented with evidence that specifically demonstrates a reasonable and supportable basis for making an informed judgment about a party's likely tax liabilities.* Where the amount of the tax consequence or the potential for tax liability is too speculative, the court will not take into account the possible effects of taxation in dividing property."

*Rykert and Rykert*, 146 Or App 537, 544, 934 P2d 519 (1997) (internal citations and quotation marks omitted; emphasis added); *see also Follansbee and Ackerman*, 115 Or App 39, 41-42, 836 P2d 763 (1992) (an adjustment for taxes will be allowed "when it is reasonably certain that a sale will occur and there is evidence that provides a reasonable basis on which to make an informed judgment as to the probable tax liability").

Applying that standard to the court's consideration of tax consequences as to wife, we conclude that the court committed legal error. Here, although wife reasonably

---

[10] Although husband assigns error, in part, to the court having credited wife with the sales costs of her parcels, husband did not advance an argument as to why the court's calculations as to those costs were erroneous.

anticipated selling the share of the property awarded to her, the evidence presented by wife's expert pertained to the tax lots she hoped to receive in the property division and not the tax lots that the court ultimately awarded to her. There was no other evidence presented by either party related to the parcels actually awarded to wife. As such, the court had no evidence on which to base its tax calculations as to that property, which the court acknowledged. Once more, in its letter opinion, the court stated:

> "Although [wife's tax expert] opined that the income tax liability would be $119,000 for the sale of parcels 3300, 3500 and 3601 rather than for 3300, 300 and 400, I was unable to discern the methodology he used to arrive at a basis for each property. Therefore, *I am unable to perform the computations to recompute the capital gains on these three parcels.*"

(Emphasis added.) Nevertheless, the court concluded that "$119,000 [was] an adequate adjustment for tax liability." The court did not explain why it believed that figure was still reasonable despite not corresponding to the specific parcels awarded to wife. Given that the court's basis was speculative, we conclude that the court erred in discounting the anticipated tax liabilities from wife's share. Therefore, we vacate the equalizing judgment, which the court indicated was based on the court's consideration of wife's tax consequences.[11]

Husband's claim that the court should have credited him with his expected tax consequences fails for similar reasons. He contends that the court was obligated to consider tax consequences for him under ORS 107.105(1) (f)(G);[12] however, he did not present any evidence to the

---

[11] Given our disposition, we do not address husband's claim that the court erred by relying on the expert's testimony because the expert's tax calculations took into account wife's total income, including her Social Security income.

[12] ORS 107.105(1)(f)(G) provides, "In arriving at a just and proper division of property, the court *shall* consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties." (Emphasis added.) However, that subsection of the statute is contrary to the language of ORS 107.105(2), which provides, "In determining * * * the proper division of property under subsection * * * (f) of this section, the court *may* consider evidence of the tax consequences on the parties of its proposed judgment." (Emphasis added.) When noting that statutory inconsistency, the Supreme Court has, in the past, logically "assume[d] that

court to allow for such consideration. Presumably, husband did not present such evidence because his position at trial was that he had no desire to divide or sell his property. On appeal, husband claims that, because the court nonetheless concluded that he likely would have to sell at least some of the real property awarded to him, the court should have considered his potential tax liabilities. Yet husband does not point to any evidence in the record that would have permitted the court to consider such consequences in a non-speculative manner. Indeed, in its letter opinion, the court indicated that it did not consider tax consequences as to husband because he did not make such a request and did not present any evidence on that issue. As such, the court did not err in failing to consider husband's tax consequences. *See Bidwell and Bidwell*, 170 Or App 239, 243-44, 12 P3d 76 (2000), *adh'd to on recons*, 172 Or App 292, 18 P3d 465, *rev den*, 332 Or 305 (2001) (declining to consider the possible effects of taxation in dividing property where "there [was] no evidence in [the] record of what the tax consequences would be" if the property was sold); *see also Michaels and Michaels*, 158 Or App 58, 64, 970 P2d 692 (1999) (trial court did not err in failing to consider tax consequences where "there was no expert testimony * * * as to what the tax consequences on each pension would be"); *Smith and Koors*, 149 Or App 198, 204, 942 P2d 807 (1997) ("[T]rial court did not err in failing to discount the value of the property for taxes and costs of sale" where there was "no evidence * * * of the costs of sale and tax consequences.").

Lastly, we address husband's third assignment of error in which he claims that the trial court erred in crediting him with $18,200 worth of personal property sales while failing to credit wife with $22,000 worth of personal property sales. On appeal, husband argues that the trial court erred by concluding that he sold those assets without the court's permission and had not properly accounted for the proceeds. Husband claims that he justifiably spent the

---

the legislature intended that the consideration of tax consequences *be made upon request,* and where appropriate, *after presentation of relevant evidence." Engle and Engle,* 293 Or 207, 213, 213 n 5, 646 P2d 20 (1982) (emphases added); *see also Michaels and Michaels,* 158 Or App 58, 64, 970 P2d 692 (1999) ("A court may consider tax consequences; it is not required to do so."). Thus, given the circumstances of this case, we need not address or resolve that inconsistency.

proceeds on "necessities of life," for which he did not require the court's approval under ORS 107.093(2)(c).[13] In addition, husband claims that the court erred in failing to credit wife with the proceeds of the sale of her piano, resulting in an erroneous "just and proper" determination. Husband asks that we either reduce the equalizing judgment by $18,200, or, in the event that we vacate that award, that we award him an equalizing judgment in that amount.

Wife, in turn, argues that husband fails to take into account the court's findings that he violated the statutory restraint on the sale of assets and that it did not find husband's accounting to be credible. Wife notes that the court rejected husband's claim that he sold his equipment to cover the cost of wife's care and contends that husband ultimately did not present sufficient evidence to support his testimony. She further asserts that the court did not err by not crediting her with the sale of her piano, because the court found that the proceeds were used for a legitimate purpose (attorney fees). Wife opposes husband's request for an equalizing judgment in the amount of husband's sale proceeds.

After parties file a petition for dissolution of marriage, "the rights of the parties in the marital assets shall be considered a species of co-ownership." ORS 107.105(1)(f)(E). To protect the parties' rights, a court may issue an order prohibiting parties from disposing of shared marital assets without approval of the court or the other party. ORS 107.093(2)(c). We have previously explained that, "[w]hen a transfer of marital assets has been made without the consent of the other spouse, the trial court may consider that in determining what is a 'just and proper' property division." *Howard and Howard*, 103 Or App 342, 349, 798 P2d 683 (1990). That is so, because, "[u]nder ORS 107.105(1)(f), parties ought to be entitled to approve or disapprove any

---

[13] ORS 107.093 sets out the provisions that a court may order after a petition for marital dissolution is filed. Among them, a court may include a provision prohibiting a party from

"[t]ransferring, encumbering, concealing or disposing of property in which the other party has an interest, in any manner, without written consent of the other party or an order of the court, except in the usual course of business or for necessities of life."

ORS 107.093(2)(c).

substantial disposition of any marital assets held as a 'species of co-ownership.'" *Id.*

In this case, husband contends that the court erred in considering his sale of marital assets totaling $18,200 as part of his property division. He claims that he did not need the court's permission or, presumably, wife's, to sell those assets because the proceeds were used to cover "necessities of life." Husband's position presumes that the record indeed reflects that husband spent all of the proceeds on such expenses. On this record, however, where there are at least some discrepancies in husband's accounting of the proceeds, the court did not err in allocating those proceeds to his share of the property division.

However, we agree with husband that the court erred by not similarly crediting wife with the $22,000 from the proceeds of the sale of her piano. Here, it appears that the parties consented to wife selling the piano, and wife's accounting of those proceeds was clear—she used the full amount to pay her divorce attorney. Nevertheless, the court was not permitted to discount that amount from wife's share of the marital property. The court was aware that, by discounting the $22,000 from wife's share, it was, in effect, "award[ing] wife $22,000 in attorney fees." Although a court may provide for "an award of reasonable attorney fees and costs and expenses reasonably incurred in the action in favor of a party or in favor of a party's attorney," ORS 107.105(1)(j), a court does not have the authority to award such fees as part of the property division. *See* ORS 107.105(1)(f) (statute does not provide for attorney fees under a property division award); *Johnson and Johnson*, 277 Or App 1, 15, 370 P3d 526 (2016) (allocating the responsibility of attorney fees to husband separately from the parties' marital assets and debts); *Branscomb and Branscomb*, 201 Or App 188, 202, 117 P3d 1051, *rev den*, 339 Or 544 (2005) (same).

Spousal support award reversed; property division vacated and remanded; otherwise affirmed.