Argued and submitted October 9, 1997, remanded in part; otherwise affirmed May 27, respondent's petition for reconsideration filed June 5 allowed by opinion September 2, 1998
See 155 Or App 629, 964 P2d 1097 (1998)

In the Matter of the Marriage of

Gerald Leroy ENDERS,
*Respondent,*

*and*

Patti Grace ENDERS,
*Appellant.*

(CV95-0414; CA A94771)

960 P2d 896

Steven N. Thomas argued the cause for appellant. With him on the brief was Corey, Byler, Rew, Lorenzen & Hojem.

Michele Grable argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

### ARMSTRONG, J.

Wife appeals the division of property in a dissolution action. Specifically, wife appeals the trial court's adoption of husband's proposed property division, prepared in response to the court's memorandum opinion, that did not include an equalizing judgment in favor of wife. We review *de novo* and modify the court's order to provide for an equal division of assets.

The parties were married in January 1991. Husband and wife each had two children from previous marriages, but only one child, husband's son, was a minor at the time of the dissolution. There were no children of the marriage. Both parties worked full time throughout the marriage. In February 1992, the parties separated, and husband and his children moved to Echo. The parties reunited in November 1993, when wife moved to Echo. Husband had purchased the home in Echo before the marriage, and Homestead Title Company held a mortgage on it, in husband's name, with a balance of $10,839 as of January 1991. In 1994, the parties refinanced the home, listing wife as the mortgagor because husband's credit record disqualified him for any financing.[1] The purpose of the refinancing was to consolidate outstanding debts accumulated by both parties, both before and during the marriage. The parties separated again in May 1995, after wife obtained a restraining order preventing husband from occupying the home. As part of the dissolution judgment, the trial court divided the property in keeping with husband's proposed division. That division resulted in an unequal distribution, with husband's share being approximately $20,000 more than wife's.[2]

■ Husband claims that the property division is equitable, because the marriage was short-lived and wife did not contribute substantially to family expenses. At trial, he testified that, in five years of marriage, the parties had lived

---

[1] Husband twice has discharged his debts in bankruptcy, most recently in 1988.

[2] It is difficult to put an exact figure on the difference in the value of the property distributed to the parties in the trial court's judgment, because the parties dispute the value of the assets and the court did not expressly resolve their disputes. We settle those disputes in this opinion.

together only 31 months and that, although wife worked full time, he "never saw her paycheck." Perhaps not surprisingly, wife testified to the contrary, stating that she believed that she had borne the financial burdens of the household. Husband argues that the court's property division reveals an intent on the part of the court to disentangle the parties' financial as well as legal relationship.

It is true that in some instances, where a marriage is short-lived and where the parties have not commingled their financial affairs, an unequal property division may be just and proper, if it operates as a "rescission" that places the parties in the position that they would have been in had their marriage never occurred. *See York and York*, 30 Or App 937, 939, 569 P2d 32 (1977). The length of the marriage and the amount of time that the parties have lived together does not determine that result; rather, it turns on the extent to which the parties' finances have become "interrelated past the point of simple extrication." *Jenks and Jenks*, 294 Or 236, 242, 656 P2d 286 (1982). That determination must be made in the context of the rebuttable presumption that parties to a marriage contribute in equal parts to the acquisition of property during the marriage, whether the property is jointly or separately held. ORS 107.105(1)(f). That presumption also applies to the appreciation in value during the marriage of assets brought to the marriage by either party. *See Massee and Massee*, 138 Or App 589, 594-95, 911 P2d 322, *rev allowed* 323 Or 483 (1996). In order to rebut that presumption, the party challenging it must prove by a preponderance of the evidence that one spouse acquired the property uninfluenced, either directly or indirectly, by the other spouse. *See Budge and Budge*, 150 Or App 209, 214, 945 P2d 1101 (1997).

We conclude that the facts of this case reflect a significant intermingling of the parties' finances, well beyond the point of simple extrication. While it is true that the parties kept separate checking accounts, both parties were authorized users of various credit cards and the refinancing of the house was done in wife's name because of husband's poor credit rating. There was conflicting testimony as to who was responsible for the credit card debts, as well as to how those debts had been accrued, but it is clear that each party was responsible for some of the debt. We further conclude

that, despite the separations, wife contributed to both the economic and domestic livelihood of the marriage, entitling her to an equal distribution of marital assets. Most importantly, the financial decisions made by the parties, including the decision to refinance the family home in wife's name, have made a simple extrication impossible.

Aside from household furnishings, for which husband's appraiser offered value estimates based on "quick sale" prices, the parties' property includes the home, their individual pension funds and their individual automobiles. Furthermore, together they have amassed significant debt. Again, the parties dispute the assets and liabilities that each should be assigned, as well as the manner in which those assets and debts should be calculated. Three of the parties' disputes cause a possible imbalance in awards. We turn to those disputes.

■ The first dispute centers on the value of two "antique" cars restored by husband and sold by him for $1,500 just before he filed for dissolution. Wife argues that the sale of the cars was a sham and that their assessed value of $9,500 should be imputed to husband as an asset. In response, husband argues that the $1,500 sale was proper and that the cars are no longer in his possession. Although the sale was close to the filing of the dissolution action, we find no evidence in the record to conclude that the sale was fraudulent, and, therefore, we decline to impute the assessed value of the cars to husband. *Compare Holemar v. Holemar*, 27 Or App 613, 557 P2d 38 (1976) (court imposed constructive trust on property conveyed by husband to daughter when evidence disclosed that husband's sole motivation was to avoid claim against property by wife). However, the *actual* proceeds of the sale must be assigned to husband.

■ The second dispute centers on the value of wife's car, a 1994 Pontiac Bonneville. Wife testified that the parties had purchased the car together, at husband's insistence. At the time, wife still owed a significant amount on the car that the parties traded in as part of the purchase and that debt increased the financing cost of the Bonneville. At the time of trial, wife owed $20,871 on the car. The parties dispute the actual value of the car, and the calculations presented in the

briefs do not account for the same factors. The parties put in evidence a guide to used automobile prices, however, and, based on the figures provided in that guide, we conclude that the value of the car at trial was $13,200. When set against the debt, the net value of the Bonneville is a *negative* $7,671. Husband contends that wife should not be credited with the negative equity in the Bonneville, but he gives no principled reason for that contention. Generally the outstanding mortgage is deducted from the value of real property when determining value, and we see no reason not to do the same for personal property.

■　　Each party should also be responsible for the debts most logically linked to that party. Accordingly, wife shall be responsible for the credit card debts for which she is the primary cardholder, and husband shall be responsible for the debt on the credit card issued to him, as well as for an outstanding bill from Les Schwab for $109. In addition, husband has an outstanding debt for work that he failed to perform in exchange for furnace work on the home. Because there is no indication that he will ever perform that work, he is responsible for the cash value of the furnace debt, $2,540.[3]

■■ The final dispute centers on the home in Echo. Husband contended, and the trial court apparently agreed, that he should be given the home so that he and his minor son would not be forced to move. This is not a case, however, that involves a custodial parent with young children who need a stable or familiar environment, nor is it one that involves a noncustodial parent who will receive substantial assets so that an award of the family home to the custodial parent is equitable. Husband's son was 16 years old at the time of trial and a junior in high school. He was living in Idaho with his mother and attending high school there. He testified that he had friends in Idaho as well as in Oregon, and he agreed that he had wanted to live with his mother long before this dissolution action began. Considering the son's age, as well as the

---

[3] To the extent that our calculations differ from those offered by the parties in their briefs, they are based on the testimony given by the parties at trial as modified by reference to the tax forms and balance statements included in the record on appeal.

fact that there is no evidence that husband has sought temporary living quarters where he and his son could live during the period that husband was excluded from the home by court order, we are not persuaded by husband's arguments that it would be unfair to require him to sell the "family home." Indeed, in our view, the only means of achieving an equitable result in this case is to order the sale of it. Although husband had purchased it before the marriage, it has been refinanced in wife's name and there is evidence that its value was significantly higher at the time of trial than at the time of the parties' marriage. Moreover, there is evidence that wife contributed, both economically and noneconomically, to that increased value.

In order to leave the parties on an equal financial basis, we remand the case to the trial court to enter a modified judgment to require the house to be sold and, after the satisfaction of the mortgage and any selling costs, to pay wife $10,094 from the proceeds of the sale and to divide the balance of the proceeds equally.

Remanded to enter modified judgment to require house to be sold and, after satisfaction of mortgage and selling costs, to pay wife $10,094 from the proceeds of the sale and to divide the balance of the proceeds equally; otherwise affirmed. Costs to wife.