Argued and submitted October 11, 2002, modified in part; otherwise affirmed
February 5, 2003

## In the Matter of the Marriage of

## Jan Leree ASHLOCK,
*Appellant,*

*and*

## Donald Robert ASHLOCK,
*Respondent.*

## C000383DR; A115626

62 P3d 874

Ira L. Gottlieb argued the cause and filed the briefs for appellant.

Ronald Allen Johnston argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J.

## KISTLER, J.

Wife appeals from a dissolution judgment that, among other things, awarded her half the marital debt and none of a business that husband created during the marriage. She contends that the trial court impermissibly allowed husband to choose whether to give her stock or to pay her spousal support and that, if husband received the business, he should be responsible for the business-related debt. We modify the judgment to make husband responsible for the business-related debts but otherwise affirm.

Husband and wife married in 1978. At the time of the dissolution hearing, wife was 42 and husband was 44 years old. The parties have four children, three of whom are still minors. Wife was awarded custody of the children, an award that husband does not now contest. Wife worked on and off as a nurse during the marriage. She also worked for husband when he was operating his businesses. For his part, husband started or was involved with approximately 19 different business ventures during the course of the marriage. Only a few of those business ventures are relevant to this appeal. Husband and a person for whom husband was working at the time decided to finance and build a Street of Dreams custom home. Their intent was to sell the home upon its completion. Due to various financial problems, however, the project was put in jeopardy. As a result, husband's parents ultimately purchased the home and, when it did not sell as planned, leased it to husband and wife. Husband continues to live in the home.

Husband's most recent and current business is AtlasMall.com, a "multi-level marketing business." The business tracks sales through the Visa credit card system in order to collect commissions from participating merchants, which are rebated in part to the credit card holders. Husband intended to capitalize the company through a private stock placement, establish a working cash flow, and then take the company public. Husband owns approximately 22 million shares of AtlasMall.com.

As with many dot-com businesses, husband's business suffered greatly when the market for Internet stocks

plummeted. AtlasMall.com experienced a lack of cash infusions that, in turn, caused financial difficulties for husband and wife. Husband's parents loaned them a significant amount of money so that they could pay their housing and other living costs. Husband may have used some of those funds in his business as well. At trial, the court found that the loans from husband's parents totaled $183,256. In addition, the parties accumulated nearly $75,000 of credit card debt.

Several of husband's business associates also loaned husband money so that he could cover the operating costs of AtlasMall.com and his other expenses. One of his associates, Wayne Shaffnit, loaned husband approximately $58,000 so that husband could pay the legal fees incurred in a lawsuit that challenged the business practices of husband's companies. Husband also borrowed $400,000 from Brodear and Boudreau. Approximately $290,000 of this money was deposited into an account for Net Development, a business idea that husband developed but never implemented. Ostensibly, this money was for the operating costs of AtlasMall.com. However, some of the money, approximately $5,000, was used to pay personal expenses, such as housing and groceries. The rest of the money, or approximately $105,000, was used to repay an obligation that husband owed his parents. As explained below, however, the obligation to husband's parents was actually used to satisfy part of a judgment stemming from another lawsuit arising out of husband's businesses.

All told, at the time of the hearing, AtlasMall.com was approximately $750,000 in debt. At that time, the business was dormant, although husband was actively trying to revive it as well as one of the affiliates associated with AtlasMall.com. There was no source of revenue and very limited sales activity was occurring.

At trial, wife requested that she be awarded a substantial amount of spousal support, either periodically or as a lump sum payment, and that the debts incurred in the course of running the businesses be awarded to husband. She initially stated that she wanted none of the AtlasMall.com stock and, indeed, several people testified about the adverse effects

on the business if wife received a substantial portion of the company's stock in the dissolution proceeding. In contrast, husband asked, among other things, that AtlasMall.com be awarded to him and that the marital debts be divided equally.

The trial court issued a letter opinion, finding that AtlasMall.com had no fair market value, although some business activities remained. It also found that husband had no income and that his earning capacity was difficult to discern because of "the 'convoluted labyrinth' of the corporations' finances, the lack of reliable financial information, and [husband] generally making the determination of his earning capacity difficult for opposing counsel as well as the court."

In dividing the parties' assets, the court noted that it was equitable to divide the stock in AtlasMall.com equally. If, however, the stock were divided, there were concerns about the control of the corporation. Husband did not favor dividing control, and the court found that "[wife] is not particularly interested in having the stock[,]" which at that time had minimal or no value. The court accordingly proposed, as an alternative, giving wife spousal support for five years at the rate of $25 a month in lieu of the stock division and noted that "[a] substantial increase in the stocks' value would be a change in circumstances justifying a review of the spousal support award." Given the parties' respective interest (or lack of it) in this issue, the court acceded to the husband's preference for spousal support rather than a stock division.

The court turned finally to the marital debt. It determined that wife would be required to reimburse husband for half of his payments of the parties' debts, up to a maximum of $634,876. Those debts included money owed for payroll taxes for the business as well as money owed to husband's parents, Boudreau, Brodear, and Schaffnit. The court also ordered that the parties each pay half of their $75,000 of credit card debt.

■ On appeal, wife assigns error to four of the trial court's rulings. We address the first two rulings and affirm the remainder without discussion. In her first assignment of error, wife argues that the trial court erred in "giving the Husband the option to either divide the stock 50-50 or enter a

spousal support award in favor of Wife for five years at the rate of $25 per month in lieu of the stock division." Although wife raises a number of arguments in support of this assignment of error, only one of them corresponds with the ruling to which she has assigned error. We address only that argument. *See* ORAP 5.45(4); *State v. Brenner*, 151 Or App 159, 164, 947 P2d 1139 (1997). Regarding that argument, wife contends that

> "[t]he primary function of courts is to make decisions with regard to matters properly brought before them. * * * The court's duty is to decide the case on the facts presented. The court, not [husband], had to determine whether wife should be awarded stock or spousal support in an appropriate amount. By delegating its decision-making responsibility to [h]usband, the court violated its judicial duty."

Husband responds that no improper delegation occurred because the trial court retained authority to accept or reject the parties' choices.

■ Viewing the record in its entirety, we cannot say that the trial court improperly delegated its authority to husband. Rather, it proposed alternative resolutions and respected the parties' preferences in attempting to structure the dissolution judgment fairly and equitably. In many respects, the trial court's action here is no different from a decision to approve or disapprove an agreement between the parties dividing their assets and allocating responsibility for paying spousal and child support. In both instances, the court retains the authority to accept or reject the parties' choices.[1] The trial court did not err in accepting husband's preference.

In her second assignment of error, wife contends that the trial court erred when it assigned her half of the debt that husband incurred during the marriage. Because much of that debt was incurred in the course of husband's business and because husband was awarded the entire business, wife

---

[1] Wife also argues that the court's award of spousal support should be set aside because a court may not make a "minimal or token award of [spousal support] for the sole purpose of reserving to the court the power to modify" the award to meet future contingencies. *Koch and Koch*, 58 Or App 252, 256, 648 P2d 406 (1982) (quoting *Johnson and Johnson*, 245 Or 10, 14, 419 P2d 28 (1966)). However, when wife filed objections to the trial court's proposed findings, she did not raise this issue and may not pursue it on appeal.

argues that it is unfair to assign her half of that debt. Wife points to four debts that she claims are business related and that were improperly included as marital debt. For his part, husband contends that, because the loans that wife characterizes as business debts in fact provided income to the family, wife should be responsible for half of them. In other words, husband argues that, although he incurred many of the debts with the idea that the money would be used in the business, the money was often used to maintain the parties' lifestyle.

■■  As part of its authority to divide property, a court may divide the debts that the parties incur during their marriage. *McInnis and McInnis*, 62 Or App 524, 527, 661 P2d 942 (1983). As with other assets acquired during marriage, the debts should be divided equitably. *Id.* In this case, there is no question that husband incurred these debts during the course of the marriage and that, therefore, the court may divide them. The only question is how the debts should be divided.

Neither we nor the Supreme Court has specifically addressed the question whether business debts go with the business. Several other jurisdictions, however, have concluded that they should. *See In re Herr*, 705 SW 2d 619 (1986) (where husband received the parties' farm, proper to burden him with farm debts); *Freed v. Freed*, 454 NW 2d 516 (1990) (same). We agree that, as a general rule, when a court awards a business entirely to one party, the debts associated with that business should go with it. Here, the problem lies in disentangling husband's business practices and determining which monies were used for the business and which were used to maintain the parties' lifestyle.

■  In answering that question, we address the four debts that wife argues should have been allocated to husband. First, wife contends that a $183,256 debt to husband's parents should have been assigned solely to husband. The evidence at trial, however, showed that husband's parents loaned the money to the parties for their living expenses and that it was used for that purpose. Wife does not dispute that point so much as she argues that the money should be viewed as a gift because husband's parents did not intend to pursue

any legal action against their son if he failed to repay them. The trial court, however, viewed the transaction as a loan rather than as a gift, and we decline to second guess its characterization of the transaction.[2] The trial court correctly divided this debt between the parties.

■　　　Second, husband received loans from Brodear and Boudreau, which totaled $400,000. Husband testified that he borrowed that money so that he could cover the operating costs of AtlasMall.com. As mentioned above, the money was deposited into an account for Net Development, a business idea that husband never fully implemented. Husband testified that approximately $5,000 of these loans was used to pay personal living expenses for the parties. An additional $105,000 of this money went to husband's parents. Although $105,000 was put into an account in husband's parents' names, it was used as partial satisfaction of another legal action that had been filed against husband. The trial court found that the action was the result of husband's business activities and that he should be responsible for any debt stemming from that lawsuit. Necessarily then, the trial court erred, at the least, in assigning wife responsibility for $105,000 of the $400,000 loan from Brodear and Boudreau. There is no persuasive evidence that the remainder of the money was not used for business purposes, and, given our decision that business debts should generally follow the award of the business, we also hold that the portion of these loans that was used for business purposes should also have been awarded to husband. Accordingly, the debt for the $5,000 that was used for personal family expenses should be divided equally between husband and wife, but husband should be responsible for the remaining $395,000.

■　　　Third, Shaffnit loaned husband $58,000 so that husband could pay the legal fees arising out of a lawsuit filed against him for his business activities. At the time of the hearing, husband was paying interest on that loan, and the

---

[2] Moreover, according to the terms of the amended dissolution judgment, wife is "required to reimburse [husband] for 50% of his payments on the debts[.]" If husband's parents never require him to repay them, under the terms of the judgment wife will owe nothing for this liability.

loan payments were coming out of a business account. Husband testified that he needed the money from Shaffnit to make house payments and cover other living expenses. However, husband could provide no estimate on how much of that loan was used to pay those expenses. Given that Shaffnit testified that the money was to pay legal expenses for the lawsuit and that there is no information about how much, if any, of the money was used for personal expenses, we conclude that the $58,000 debt should have been awarded solely to husband.

■      Finally, wife argues that she should not be responsible for the $43,600 payroll deduction debt. There is no dispute that this debt arose out of husband's business transactions. Because husband received the business, this debt should also have been assigned to him.

Paragraphs 11 and 12 of amended judgment modified to delete any obligation for wife to reimburse husband for 50 percent of any payment on $395,000 owed Brodear and Boudreau, $58,000 owed Shaffnit, and $43,600 owed for payroll taxes; otherwise affirmed.