No. 89          February 12, 2025          743

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Vicki DALTON,
*Petitioner-Respondent,*
*and*

Jeremiah Jalon DALTON,
*Respondent-Appellant,*
*and*

Sarygh DALTON,
*a necessary party.*

Multnomah County Circuit Court
20DR02198; A179263

Xiomara Y. Torres, Judge.

Argued and submitted February 21, 2024.

Laura Graser argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and, Mooney, Senior Judge.

MOONEY, S. J.

Property division reversed and remanded; otherwise affirmed.

**MOONEY, S. J.**

Husband appeals a general judgment of marital dissolution. He raises two assignments of error. In his first assignment, husband challenges the trial court's calculation of an equalizing judgment in wife's favor. The trial court awarded the marital residence to husband and ordered him to pay a $103,994 equalizing judgment to wife, reflecting half the fair market value of the house at the time wife moved out in 2013. We conclude that the trial court erred because it failed to account for the mortgage on the property in its calculation. In his second assignment, husband contends that the trial court erred by awarding wife indefinite maintenance spousal support in the amount of $500 per month. He argues that the award is unreasonable, and that the trial court did not properly consider husband's expenses or wife's needs. We conclude that the trial court did not abuse its discretion in awarding wife spousal support. Accordingly, we reverse and remand the property division, and we otherwise affirm.

"[W]e view the facts consistently with the trial court's express and implied findings, as supplemented by uncontroverted information from the record." *Code and Code*, 280 Or App 266, 267, 380 P3d 1073 (2016). We state the facts consistently with that standard.

The parties married in 1996. They separated in March 2013, and wife filed for divorce in February 2020. The dissolution trial took place in fall 2021, at which time, husband was 52 years old, and wife was 49 years old. Husband and wife have three joint children. One child was still a minor at the time of trial; however, custody is not at issue in this appeal.

In 1999, the couple purchased a house in Multnomah County for $169,500. Husband obtained a mortgage for about $180,000. Wife was not named in the original deed, and the parties dispute whether wife contributed to the down payment. Wife testified that, at the time, the couple maintained a joint checking account, and that husband had used joint funds for the down payment. Husband testified that he covered the down payment by obtaining a private second

mortgage. In 2006, the parties refinanced. Wife's name was added to the deed, and the mortgage was placed solely in wife's name.

The couple separated in March 2013, and wife moved out of the house. Since the separation, husband has been responsible for paying the mortgage, although the mortgage has remained in wife's name. A mortgage statement from 2021 showed that husband was several months behind in his payments. That statement also showed that the remaining principal on the mortgage as of May 2021 was approximately $233,500. Wife testified that since 2013, she has stayed over at the house on two occasions, she has not contributed to the mortgage or other expenses, and she has not contributed to any maintenance or improvement work for the house. The parties agree that at the time of their separation in 2013, they were "underwater" on the home, meaning they owed more on the mortgage than the house was worth at that time.

At trial, husband introduced, and wife stipulated to, a comparative market analysis which estimated the value of the house in 2013 and in 2021. The 2013 evaluation concluded that the property was worth $207,888, and the 2021 evaluation concluded that the property was worth $400,440.[1]

During the marriage, the couple largely kept their finances separate. Husband was responsible for the mortgage, while wife handled other household bills, such as utility costs. Both parties worked. Husband worked full time, while wife worked part-time and cared for the children. Following the separation, wife was diagnosed with pancreatic and liver cancer, and she also suffers from a neurological condition. Those diagnosed health conditions prevent wife from working. She receives health insurance coverage through Medicare and receives a monthly Social Security disability benefit. Since she moved out of the couple's house, wife has lived in a rental unit owned by her parents. She does not pay rent or any utility costs. Wife's monthly income is $1,750 per month, which includes a monthly benefit

_____

[1] The parties' respective briefing advises that there was no current valuation of the house offered at trial, however, the market analysis that husband submitted to the court includes a then-current 2021 valuation, to which wife stipulated.

payment to the youngest joint child in the amount of $588, which is set to end when that child turns 18. At the time of trial, husband had recently started a new job working for Multnomah County as a correction technician. He earns $29 per hour, and his monthly gross income is $4,600. Due to a hand injury, he left a prior higher-paying job. Husband provides medical coverage to the two youngest joint children. For at least a period of the separation, husband also provided medical coverage to wife. Husband has since removed wife from his insurance, although the parties dispute when he made that change—husband testified that he did so four years ago, while wife testified that she was insured until shortly before the beginning of the dissolution trial.

Since the separation, the parties have coparented their children, who generally split their time between their parents' households. With the onset of the pandemic, the children began to stay primarily with husband due to concerns about wife's health. Husband also has two nonjoint children, and he pays child support monthly to their mothers.

Wife sought an indefinite maintenance award in the amount of $2,200. Husband opposed that request, testifying that he could not afford that amount of spousal support, and that he struggles to meet his own monthly obligations. On cross-examination, he acknowledged that his bank statements show that he occasionally receives small amounts of money from family and friends, and that he generally has some disposable income.

The trial court awarded the house to husband and ordered him to pay an equalizing judgment of $103,994 to wife. The trial court explained the property division as follows:

"Well, here's what I considered in making my decision and issuing my order. I considered two possibilities. One was the sale of the home or, two, awarding [wife] half of the value of the home when she moved out.

"So if the court were to order the sale of the home, then I would still be ordering half of the value at the time that [wife] moved out. And so I—We have two ways we can resolve this. One, I can turn it into a money award or I can order the sale of the home. And my understanding from

the testimony was that father really desired to stay in the home, which is why I did it this way."

The trial court also ordered husband to pay wife indefinite maintenance spousal support in the amount of $500 per month.

　　We review the trial court's legal conclusions for errors of law. *Morrison and Chierichetti*, 321 Or App 491, 495, 516 P3d 1196 (2022). However, we review the trial court's ultimate determination as to the just and proper division of property and the amount of spousal support for an abuse of discretion. *Id.*; *Wilkins and Wilkins*, 318 Or App 798, 804, 510 P3d 227 (2022). Indeed, "[w]e will not disturb a trial court's ultimate determination of what property division is just and proper unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105(1)(f); determining what is just and proper in all the circumstances is a matter of discretion." *Van Winkel and Van Winkel*, 289 Or App 805, 810, 412 P3d 243, *rev den*, 363 Or 224 (2018). Similarly, "[w]e will uphold a support award if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is just and equitable represents a choice among legally correct alternatives." *Wilkins*, 318 Or App at 804 (internal quotation marks omitted).

　　We begin with husband's first assignment of error regarding the equalizing judgment. The division of marital property upon dissolution of the marriage is governed by ORS 107.105(1)(f), which provides, as relevant:

　　"(1)　Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

　　"* * * * *

　　"(f)　For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * *

　　"* * * * *

　　(D)　* * * [T]here is a rebuttable presumption that both parties have contributed equally to the acquisition of

property during the marriage, whether such property is jointly or separately held."

Real property acquired by either spouse during a marriage is a "marital asset" that is subject to the statutory presumption of equal contribution. *Morrison*, 321 Or App at 495. To rebut the presumption, a party must prove, by a preponderance of the evidence, that the acquisition of the disputed marital asset "did not result from an equal contribution, directly or indirectly, from the other spouse." *English and English*, 223 Or App 196, 203, 194 P3d 887 (2008). If a party fails to rebut the presumption, the asset is equally divided between the spouses. *Fay and Fay*, 251 Or App 430, 437, 283 P3d 945 (2012). But, if a party successfully rebuts the presumption, "then the court decides how to distribute that marital asset without regard to any presumption and, instead, considers only what is just and proper in all the circumstances[.]" *Kunze and Kunze*, 337 Or 122, 135, 92 P3d 100 (2004) (internal quotation marks omitted). Absent other considerations, "it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Id.*

Evidence of a "long-term separation, together with financial autonomy of both parties during the period of separation, may be sufficient to rebut the presumption of equal contribution[.]" *English*, 223 Or App at 204-05 (discussing *Lemke and Lemke*, 289 Or 145, 148, 611 P2d 295 (1980)). However, where a spouse seeking to rebut the presumption has "retained substantial benefits from keeping [the] marriage intact" despite a period of separation, the presumption is not rebutted. *English*, 223 Or App at 206. In *Richardson and Richardson*, during a six-year period of separation, the parties agreed to a support arrangement in which the husband paid the wife a monthly amount to help finance her education, and he continued to cover her medical costs and car expenses. 307 Or 370, 372-73, 769 P2d 179 (1989). After a dissolution trial, the trial court awarded the husband the entire value of his pension account. *Id.* at 373. The Supreme Court modified the division of the husband's pension, concluding that the portion of the pension "attributable to [the] husband's pre-separation employment" was a jointly acquired marital asset to be equally divided.

*Id.* at 377. However, the court also concluded that the husband had successfully rebutted the statutory presumption of equal contribution with respect to the portion of the pension's value attributable to his post-separation employment "because th[at] portion of his pension was earned solely by [the] husband's efforts at a time when the parties were no longer living as a marital unit." *Id.*

By contrast, in *English*, we concluded that the husband did not successfully rebut the presumption of equal contribution, even though the parties had lived in different states during their 11-year separation. 223 Or App at 205-06. During that time, the parties maintained joint ownership of the home and were jointly responsible for its upkeep. *Id.* at 205. The wife raised the parties' children with little direct involvement from the husband, which enabled him to pursue a lucrative out-of-state employment opportunity. *Id.* at 206. The couple had held themselves out as married, despite their separation, by filing joint tax returns in which they represented themselves as mutually dependent. *Id.* Finally, the parties' finances remained intertwined throughout the separation: they commingled some of their assets, the husband paid the mortgage and other bills for the house where the wife and children resided, and the husband provided medical coverage to the family. *Id.* at 206-07. In sum, because the parties maintained a "support-dependency relationship," and they continued to conduct themselves as a marital unit, the husband failed to rebut the presumption. *Id.* at 205.

In addition to dividing property, a trial court also divides debts incurred during the marriage. *Ashlock and Ashlock*, 186 Or App 212, 218, 62 P3d 874 (2003). "As with other assets acquired during marriage, the debts should be divided equitably." *Id.* Generally, debts associated with a marital asset go with it. *See, e.g.*, *id.* at 218-19 (concluding that the trial court erred in assigning the wife responsibility for loans used for business purposes because the business itself was awarded to the husband and "when a court awards a business entirely to one party, the debts associated with that business should go with it"). With respect to real property, the value to be divided between the parties is

calculated by subtracting the remaining mortgage from the fair market value. *See Enders and Enders*, 154 Or App 142, 147, 960 P2d 896, *adh'd to on recons*, 155 Or App 629, 964 P2d 1097 (1998) (noting that "[g]enerally the outstanding mortgage is deducted from the value of real property when determining value"); *see also Christy v. Christy*, 244 Or 575, 580, 419 P2d 425 (1966) (noting that "the only asset of any value was the equity in the home" and that if the wife had not kept current on the mortgage payments, "there would be no equity over which to quarrel").

Returning to the case before us, we begin by noting that the trial court did not explicitly conclude that husband rebutted the statutory presumption of equal contribution. However, by dividing the value of the home in 2013 when the parties separated, the trial court necessarily concluded (1) that the home was a marital asset subject to the presumption of equal contribution, and (2) that husband rebutted that presumption with respect to the post-separation appreciation of the house. We conclude that those implicit conclusions are sufficiently supported by the record. The home was acquired while the parties were married, and they resided in the house together with their children until wife moved out in 2013. Since the time she moved out, wife stayed overnight at the house on no more than two occasions, and she did not contribute to the mortgage or to household upkeep or maintenance. After the parties separated, they kept their finances separate. Husband made some child support payments to wife and for at least some period of the separation, he continued to provide her with medical coverage. However, husband has not otherwise financed wife's living expenses and the parties have maintained separate households and have jointly cared for their children. We conclude that the parties have not conducted themselves as a marital unit since the separation, and that husband has not retained substantial benefits from keeping the marriage intact.

Turning to the trial court's valuation of the home's value in 2013, we conclude that the trial court erred. As we have discussed, when dividing real property, the value to be divided is the equity. Here, the trial court divided the market value of the home without accounting for the remaining

mortgage. Although the record does not establish the precise amount owed on the mortgage in 2013, the parties agree that they were underwater on the house, and that the 2021 mortgage statement shows an outstanding principal that is higher than the 2013 value.

As we understand, wife argues that by entering an equalizing judgment in her favor, the trial court intended to prevent husband from unfairly receiving the entirety of the house's equity. However, that reading of the trial court's decision is inconsistent with the record. Per the trial court's explanation of the division, it chose not to order a sale in order to allow husband to remain in the home, and importantly, the trial court explicitly stated that even if it had elected to order the sale, it "would still be ordering half of the value *at the time that [wife] moved out.*" That explanation further supports that the trial court implicitly concluded that the pre-separation value of the house was a result of both parties' contributions, while the post-separation appreciation resulted from husband's contributions alone. Because the value at the time wife moved out in 2013 must account for the remaining mortgage on the property, the trial court erred by ordering husband to pay an equalizing judgment of $103,994 to wife, and we reverse and remand the property division.

Turning to husband's second assignment of error, we conclude that the trial court did not err in awarding wife spousal support. Under ORS 107.105(1)(d), the trial court may award spousal support in an amount and for a duration that is "just and equitable." Here, the trial court awarded indefinite maintenance support. ORS 107.105(1)(d)(C) provides that when a court awards maintenance support, it is to consider the following factors: the duration of the marriage; the age and health of the parties; the standard of living established during the marriage; the relative income and earning capacities of the parties; the parties' employment skills and work experience; the financial needs and resources of each party; the tax consequences to each party; a party's custodial and child support responsibilities; and any other factors the court deems just and equitable. "No one factor is necessarily dispositive." *Card and Card*, 298 Or App 511, 515, 450 P3d 42 (2019).

Maintenance support "allows one financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party." *Abrams and Abrams*, 243 Or App 203, 207, 259 P3d 92, *rev den*, 350 Or 716 (2011). While the goal of self-sufficiency is an important consideration, "in long-term marriages the parties should be separated on as equal a footing as possible, and the primary goal of spousal support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage." *Steele and Steele*, 254 Or App 79, 82, 293 P3d 1077 (2012) (internal quotation marks omitted). Notwithstanding those goals, "spousal support should not be set at an amount that is higher than the obligor can reasonably afford to pay at the time of dissolution." *Abrams*, 243 Or App at 208.

Here, the trial court did not make specific findings to explain its spousal support award, but it listed the statutory factors in the judgment, implicitly concluding that those factors weighed in favor of an indefinite maintenance award. That was a permissible conclusion given the record in this case. The parties were married for 26 years. At the time of dissolution, wife was in poor health—she received monthly chemotherapy for multiple cancer diagnoses and suffered from a neurological disorder. The parties' income and earning capacities are disparate: husband is employed full-time and grosses approximately $4,600 each month. Wife has not worked in nearly ten years because of her disability and relies on income from Social Security.

Husband argues that the trial court failed to adequately consider the financial needs of the parties and husband's child support responsibilities. As to wife's financial needs, husband emphasizes that wife lives expense-free in a rental unit owned by her parents. As to his expenses, husband argues that his current living expenses and other obligations exceed his monthly income, and he therefore cannot reasonably afford to pay spousal support, especially considering his child support obligations for two nonjoint children. He points to the fact that wife has minimal housing expenses, and he claims that he has no money left after covering his monthly expenses. It is true that wife benefits

from her parents' provision of rent-free housing, but it is also true that husband benefits when his friends and family occasionally provide him with money. Husband apparently has some disposable income as well. Wife's only source of income is her Social Security disability benefit. Husband is gainfully employed. The purpose of maintenance support in a long term marriage like this is to separate the parties on as equal a footing as possible. We cannot say, on this record, that the trial court abused its discretion in awarding wife indefinite monthly maintenance support in the amount of $500.

Property division reversed and remanded; otherwise affirmed.