122 April 29, 2026 No. 343

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Eric J. VON RADICS,
*Petitioner-Appellant,*
*and*

Elizabeth E. VON RADICS,
*Respondent-Respondent.*

Jackson County Circuit Court
23DR08754; A184464 (Control), A186180

Charles G. Kochlacs, Judge. (General Judgment)

Matthew Rowan, Judge. (Supplemental Judgment)

Argued and submitted on December 16, 2025.

Melisa A. Button, argued the cause for appellant. Also on the briefs was Hornecker Cowling LLP.

Elizabeth C. Savage argued the cause and filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Reversed and remanded.

**O'CONNOR, J.**

Husband appeals from a judgment of dissolution of marriage and money award. Husband raises three assignments of error. In his first assignment of error, he argues that the trial court erred when it denied his request for indefinite maintenance spousal support of $2,500 a month, contending that the trial court could not award his business in lieu of support because it was not an income-generating property. In his second assignment of error, husband argues that the trial court erred when it awarded wife the entirety of her separately held inherited account without offset because the parties "ignored" that account at trial, without requiring wife to rebut the presumption of equal contribution. In his third assignment of error, husband asserts that the trial court erred when it equally divided an investment account held in his name, which husband views as a separately held gift, when the trial court decided not to equally divide an account inherited by wife.

We reverse and remand because we agree with husband's first assignment of error. The trial court exercised its discretion based on predicate legal error. The business is a non-income-generating property and thus cannot be awarded in lieu of awarding maintenance spousal support, as we explain in more detail below. We reject husband's second and third assignments of error.

## STANDARD OF REVIEW

Husband requests that we exercise *de novo* review in this case. *See* ORS 19.415(3)(b) (providing us the authority in our discretion in an equitable action to "try the cause anew upon the record or make one or more factual findings anew upon the record"); *see also* ORAP 5.40(8)(d) (listing the factors that we consider when deciding whether to exercise our discretion). Husband has not demonstrated that this is an "exceptional case" that would justify *de novo* review, and we thus decline to review *de novo*. *See* ORAP 5.40(8)(c).

Instead, we "review the trial court's ultimate determination about a just and equitable amount of [spousal] support for abuse of discretion." *Bailey and Bailey*, 248 Or App 271, 275, 273 P3d 263 (2012) (internal quotation marks

omitted). We will uphold the trial court's award "if, given the findings of the trial court that are supported by the record, the court's determination that an award of support is 'just and equitable' represents a choice among legally correct alternatives." *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). A trial court's discretionary decision about what constitutes a just and equitable amount of support may rest on predicate legal determinations. We review the predicate legal determinations for legal error. *Dalton and Dalton*, 337 Or App 743, 747, 565 P3d 441 (2025). We state the facts consistent with our standard of review.

## FACTS

Husband and wife married in 1987. Husband filed for divorce in May 2023. In December 2023, at the time of trial, husband was 61 years old, and wife was 62 years old. They had been married for 36 years.

Wife worked as a self-employed copy editor, and she had been the primary income generator during the marriage. She also rented out the accessory dwelling unit (ADU) at their martial home, for additional income.

For much of the marriage, husband ran a retail music store, Musichead, that sold guitars, guitar accessories, and new and used music. He also taught guitar lessons at Musichead and guitar classes at local community colleges.

Although the record indicates that husband operated Musichead, husband and wife jointly owned the business. They jointly owned the commercial building that housed Musichead. They also jointly owned their residence.

Husband and wife shared a joint bank account. Wife contributed to the joint bank account, but husband generally did not. Any income generated by husband tended to go back into Musichead.

Husband owned a Charles Schwab retirement account with his mother that contained approximately $115,000 at the time of trial. Husband had used that account to cover Musichead expenses in the past. Both husband and wife agreed that wife had inherited from her father a Janus

IRA account that contained approximately $387,000 and that she had held it separately from the marital finances.

In 2019, husband stopped teaching guitar classes because the community college classes were not filling up. In 2020, husband shuttered Musichead as a result of the COVID-19 pandemic. He had not reopened Musichead at the time of trial, and he testified that he did not intend to reopen it.

The record contains evidence of husband's and wife's annual incomes. Wife brought in significantly more income than husband. For example, the most income husband generated in a single year was $49,028 in 2007, followed by $41,631 in 2017. In 2020, husband made $5,640, and he testified that $500 of that he made doing odd jobs. In 2021 and 2022, when he was not operating Musichead, he testified that he again made "approximately" $500 doing odds jobs. Wife made $132,900 in 2019, $128,500 in 2020, and $125,642 in 2021. Wife's net income in 2022 from her editorial business was $112,920, and she testified she was on track to earn $88,000 in 2023. However, the trial court did not make findings about either husband's or wife's actual or imputed income for the purposes of the property division at the time of trial.

The trial court made a detailed property division, both orally and in the judgment. As relevant to the issues on appeal, the court awarded husband transitional spousal support "in the amount of $1,500.00 per month for thirty (30) months for a total of $45,000." The trial court did not award husband's requested spousal maintenance support of $2,500 a month indefinitely. Husband was also awarded from wife "an equalizing judgment in the amount of $42,528 plus gains or losses that have occurred since December 1, 2023."

The court awarded the marital residence, valued at $700,000, to wife. It awarded the commercial building that housed Musichead, valued at $390,000, to husband.

The court awarded Musichead to husband. The court explained that it could not "put a value on Musichead" and that husband "will get all inventory and that is part

in lieu of an additional support award in either amount or duration, and also based on the fact that wife is certainly going to be receiving all the household furnishings which must be—have at least some value." The judgment provided that husband was awarded "Musichead, which is assigned no value, and all inventory thereof[.]"

The trial court valued husband's Schwab account as a part of the marital retirement assets and therefore determined that it was subject to equal division. It did not consider wife's inherited Janus account as a part of the marital retirement assets and awarded it solely to wife, explaining that

> "I cannot help but believe that the decision to ignore * * * wife's Janus SP IRA was strategic in some sense, or in all senses. Both [t]rial [m]emos referred to—either inherited accounts, made a reference to inherited accounts. I could only assume, I think I could make a reasonable inference that this was this SEP IRA—of which I really heard nothing. It's in wife's name alone."

## ANALYSIS

Husband's first assignment of error challenges the trial court's decision not to award the full amount of spousal support he requested—$2,500 per month indefinitely, as noted above. Husband makes three arguments for why the trial court erred. First, he argues that the record does not support the spousal support award because the trial court failed to make a finding as to wife's or husband's actual or imputed income. Second, he argues that the court could not, as a matter of law, award Musichead to husband in lieu of additional spousal support because there was no evidence supporting wife's claim that Musichead was an income-generating property. Third, husband asserts that the trial court abused its discretion when it awarded only $1,500 a month for 30 months as transitional spousal support, given the parties' 36-year marriage, that they were nearing retirement age, and that wife earned significantly more than husband. Wife counters that awarding less than $2,500 a month indefinitely in spousal support was not an abuse of discretion because Musichead was, in fact, an income-generating property. She also asserts that husband does not adequately develop an argument on appeal about why the trial

court abused its discretion when it awarded him $1,500 a month for 30 months as spousal support.

We conclude that the record lacks evidence that Musichead was an income-generating property. The trial court could not, as a matter of law, reduce its award of spousal support based on its award of Musichead to husband. Therefore, the trial court abused its discretion when it denied husband's requested maintenance spousal support of $2,500 per month because it based its decision on an erroneous predicate legal determination. Given that conclusion, we need not address husband's other arguments in support of the first assignment of error.

"A trial court's authority over dissolution cases is solely statutory." *Card and Card*, 298 Or App 511, 516, 450 P3d 42 (2019) (internal quotation marks omitted). The legislature granted the trial courts' authority to award spousal support to a party in a dissolution matter and "the division of the parties' real and personal property." *Johnson and Price*, 280 Or App 71, 77, 380 P3d 983 (2016) (citing *Brown v. Albin*, 219 Or App 475, 480, 183 P3d 207 (2008)). ORS 107.105(1)(d) provides that the trial court may issue an order in a judgment for "spousal support," which is "an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both."

A trial court may award transitional spousal support, ORS 107.105(1)(d)(A); compensatory spousal support, ORS 107.105(1)(d)(B); or spousal maintenance, ORS 107.105(1)(d)(C). "In making the spousal support order, the court shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision." ORS 107.105(1)(d).

Here, as noted, husband requested spousal maintenance. The trial court declined that request and instead awarded husband transitional spousal support. A court may award transitional spousal support

> "for a party to attain education and training necessary to allow the party to prepare for reentry into the job market or for advancement therein. The factors to be considered by

the court in awarding transitional spousal support include but are not limited to:

"(i)    The duration of the marriage;

"(ii)   A party's training and employment skills;

"(iii)  A party's work experience;

"(iv)   The financial needs and resources of each party;

"(v)    The tax consequences to each party;

"(vi)   A party's custodial and child support responsibilities; and

"(vii)  Any other factors the court deems just and equitable."

ORS 107.105(1)(d)(A). "Spousal maintenance" is

"a contribution by one spouse to the support of the other for either a specified or an indefinite period. The factors to be considered by the court in awarding spousal maintenance include but are not limited to:

"(i)    The duration of the marriage;

"(ii)   The age of the parties;

"(iii)  The health of the parties, including their physical, mental and emotional condition;

"(iv)   The standard of living established during the marriage;

"(v)    The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)   A party's training and employment skills;

"(vii)  A party's work experience;

"(viii) The financial needs and resources of each party;

"(ix)   The tax consequences to each party;

"(x)    A party's custodial and child support responsibilities; and

"(xi)   Any other factors the court deems just and equitable."

ORS 107.105(1)(d)(C). In long-term marriages, "the primary goal of spousal [maintenance] support is to provide a standard of living to both spouses that is roughly comparable to the one enjoyed during the marriage." *Card*, 298 Or App at 515 (internal quotation marks omitted; brackets in original). A court may order a "financially able spouse to contribute to the support of the other, depending on the financial needs and resources of each party." *Id*. (internal quotation marks omitted).

In order for a trial court to award spousal support, "'there must be evidence of the obligor spouse's future earning potential and ability to pay.'" *Johnson*, 280 Or App at 78 (citing *Hendgen and Hendgen*, 242 Or App 242, 250, 255 P3d 551 (2011)). ORS 107.105(1) generally does not authorize a court to award property as spousal support. *Johnson*, 280 Or App at 79; *see also Card*, 298 Or App at 516. "[I]f a property interest is a part of the marital estate at the time of dissolution, its allocation to the parties is generally by its nature an award of *property*, not of support, even if its allocation is to enable the parties to achieve financial self-sufficiency." *Johnson*, 280 Or App at 79 (internal quotation marks and punctuation omitted; emphasis in original). But "[a]n exception exists when the assets awarded in the property division may also generate new income that may be considered in determining future spousal support payments." *Card*, 298 Or App at 516 (citing *Johnson*, 280 Or App at 79). "An award of property that * * * does not produce regular income does not reduce the need for monthly support." *Id*. at 517.

In *Johnson* and *Card*, the trial court erred by awarding property as spousal support. In *Johnson*, the trial court ordered the husband to pay the wife monthly maintenance spousal support. 280 Or App at 74. The parties lacked liquid assets. *Id*. The husband's monthly income was insufficient "to cover even his own monthly expenses." *Id*. at 78. The trial court awarded the husband a herd of bison owned by the parties, and the trial court directed the husband to "fund the [spousal] support award from the sale of as many bison as necessary each month." *Id*. at 74-75 (internal quotation marks and brackets omitted). We explained that the trial court's reasoning that the husband could afford the

spousal support award by selling the bison awarded to him in the property division was in error because the bison, at the time of dissolution, were property and should have been treated as a "divisible asset" and not as an award of "an indefinite source of income." *Id.* at 79.

In *Card*, the wife requested spousal maintenance support. 298 Or App at 516. The trial court denied the wife's request. Instead, the court awarded the wife the largest marital asset, a piece of real property acquired with a land-sale contract on which the parties still owed $57,000. *Id.* at 513. The trial court acknowledged that the husband had a greater income, but it concluded that the wife's need for spousal maintenance support was "offset by the fact that [the trial court was] giving the majority of all the assets to [the] wife," and that, "if [the] wife can't make the $600 a month payment, she can liquidate the * * * property and obtain somewhere around the value [of spousal support] that her expert testified to." *Id.* at 514 (internal quotation marks and brackets omitted). We concluded that the trial court abused its discretion "when it entered a judgment that did not award [the] wife spousal maintenance support based on the court's incorrect conclusion that the property was a substitute for spousal support[.]" *Id.* at 518.

In this case, the trial court assigned no value to Musichead and awarded Musichead and its inventory to husband, explaining that part of the reason for the property division was that it was "in lieu of an additional support award." As *Johnson* and *Card* illustrate, that was error.

Musichead was marital property at the time of dissolution. Thus, ORS 107.105(1) permitted the trial court to award Musichead to husband in lieu of spousal support only if Musichead was an income-generating property. *See Card*, 298 Or App at 516 (explaining that a court may not award property as spousal support unless "the assets awarded in the property division may also generate new income that may be considered in determining future spousal support payments"). The trial court did not determine that Musichead was income-generating, and the record would not have permitted that determination. Musichead had been closed for at least four years at the time of the dissolution. Husband,

who had been the spouse running Musichead's day-to-day operations when it was in business, did not intend to reopen it.

The fact that Musichead held some value as property does not mean that it qualifies as income-generating property. The trial court expressly declined to determine the business's value but explained that husband could sell Musichead's inventory in lieu of receiving additional spousal support from wife. But a court may not award one spouse property that the spouse must liquidate to maintain their standard of living. *See Johnson*, 280 Or App at 79. Thus, the trial court made a predicate legal error when it exercised its discretion under ORS 107.105(1). We thus reverse and remand on the first assignment of error for the trial court to exercise its discretion with a correct understanding of the law.

We briefly address husband's second and third assignments of error. As relevant to the second assignment of error, both parties testified that wife inherited and separately held the investment account after her father died and that husband never had access to it. The presumption of equal contribution does not apply to a separately held inherited account, contrary to husband's argument on appeal. ORS 107.105(1)(f)(D)(i) and (ii)[1]; *see also Brush and Brush*, 279 Or App 25, 29, 377 P3d 620 (2016) (explaining that "separately held, gifted property [i]s not subject to the presumption of equal contribution"). Therefore, the trial court did not err when it awarded wife her inherited account without offsetting its value in the property division, and we do not address husband's second assignment of error further.

We reject husband's third assignment of error as unpreserved because he did not object to the trial court's

---

[1] ORS 107.105(1)(f)(D) provides:

"(i) Property acquired by gift to one party during the marriage and separately held by that party on a continuing basis from the time of receipt is not subject to a presumption of equal contribution under subparagraph (C) of this paragraph.

"(ii) For purposes of this subparagraph, 'property acquired by gift' means property acquired by one party through gift, devise, bequest, operation of law, beneficiary designation or inheritance."

(Emphasis added.)

treatment of his investment account. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"). He did not argue before the trial court that his personal account was a separately held gift account; in fact, he testified that he had paid for Musichead expenses out of that account in the past. Accordingly, the error is unpreserved. Husband has not requested plain-error review, and we decline to review the assignment as plain error.

Reversed and remanded.